**Kathleen EDWARDS, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

**No. 92–1960.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1992.

Decided Feb. 3, 1993.

John W. Gibson (argued), Madison, WI, for plaintiff-appellant.

Mary Thorson (argued), Dept. of Health and Human Services, Region V, Office of the General Counsel, Chicago, IL, Richard D. Humphrey, Asst. U.S. Atty., Office of the U.S. Atty., Madison, WI, for defendant-appellee.

Before MANION and KANNE, Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

This case is an appeal from a district court order affirming the decision of the Secretary of Health and Human Services that the plaintiff was not entitled to disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), 1382c (1991). For the reasons articulated below, we affirm the ruling of the district court.

## I.

## BACKGROUND

Plaintiff Kathleen Edwards was born on August 3, 1946. Although she did not complete her high school education, the plaintiff has a variety of past relevant work experience, which includes housekeeping, laundry work, laboratory assistance, and ownership of a craft shop. On February 4, 1988, Edwards sustained bruises to her right leg and chest in an automobile accident. After receiving treatment at the hospital emergency room, she was released. All X-rays taken of Edwards at that time were normal. The initial diagnosis of her condition revealed an anterior chest wall contusion and a contusion of the soft tissues over the right proximal tibia.

Edwards was subsequently treated for these injuries by her physician, Dr. William J. Hisgen. X-rays of her right leg taken by Dr. Hisgen on March 4, 1988, July 15, 1988,

[*] The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

and October 9, 1988, were normal. On August 21, 1988, Dr. Hisgen performed a right leg venus duplex study, the results of which were also negative. A bone scan of the plaintiff was similarly negative. In August 1989, Edwards' electrocardiogram (ECG) was normal. A venus doppler test performed on October 9, 1989, did not indicate either phlebitis or thrombophlebitis. The bruise to Edwards' chest disappeared approximately two weeks after the incident and her chest wall contusions had resolved completely by November 1988. However, Edwards continued to complain of extreme pain. Dr. Hisgen suspected that Edwards' leg pain was due to myofascial syndrome secondary to trauma. It was Dr. Hisgen's impression that her chest pain was due to costochronditis. He further diagnosed Edwards as having fibrositis and postphlebitic pain. On December 4, 1989, Dr. Hisgen referred Edwards to Dr. William Shannon, a rehabilitation specialist. Dr. Shannon diagnosed her as having myofascial pain and referred her to a physical therapy program for use of pain-relieving modalities. Edwards did not pursue the program.

On April 3, 1989, Edwards applied for social security disability insurance benefits. On April 10, 1989, she applied for supplemental security income. Her first claim was denied on April 28, 1989. Upon plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on February 8, 1990. Edwards testified at the hearing that she could not work because of her inability to lift, bend, pull, twist, stand, sit for long periods of time, or do anything. As evidence of her extreme pain, she further testified that she took three Voltrain and six Tylenol 3 each day. Her testimony indicated that at that time she prepared meals, read, folded laundry, shopped, and attended church. The ALJ concluded that Edwards did not suffer from an impairment or combination of impairments that meets or equals a listed impairment. The ALJ discounted Edwards' testimony as to her physical limitations and pain after finding that her testimony was not credible because it was unsupported by objective medical evidence. He then found that plaintiff did not suffer a disabling or inca-

pacitating degree of pain. The ALJ concluded that although Edwards could not perform her past relevant work, she nonetheless retained the residual functional capacity to perform a full range of sedentary work. The ALJ accordingly utilized Rule 201.25 of Table 1 of Appendix 2 to Subpart P of Regulations No. 4 as a framework for his decisionmaking and determined that the plaintiff was not disabled.

Following the hearing, Dr. Robert Alt examined Edwards on April 30, 1990, and diagnosed her as having chronic pain, possibly of myofascial origin. Dr. Alt noted that by the plaintiff's description, she is totally incapacitated. He further noted the lack of physical findings to support her claim of total incapacity. On October 17, 1990, the ALJ issued a decision denying Edwards' claim. On July 26, 1991, the Appeals Council denied the plaintiff's request for review of the ALJ decision. Finally, on February 23, 1992, the United States District Court for the Western District of Wisconsin issued a final order affirming the ALJ decision, as adopted by the Secretary. It is from that decision that Edwards now appeals.

## II.

## ANALYSIS

■■■ Under Section 205(g) of the Social Security Act, the Secretary's findings must be upheld if supported by substantial evidence. 42 U.S.C. § 405(g) (1991). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Under the *Perales* standard, a reviewing court may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Secretary. *Walker v. Bowen,* 834 F.2d 635, 643–44 (7th Cir.1987). Moreover, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* at 640. Accordingly, if the findings are sup-

ported by substantial evidence, this court must accept them. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986).

■ To establish her disability, the plaintiff was required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical findings consisting of signs, symptoms, and laboratory findings, not only your statement of symptoms." 20 C.F.R. §§ 416.908, 416.927, 416.928 (1991). We have previously noted that "a claimant must provide credible testimony to obtain disability benefits based on pain or other symptoms, *and* the objective medical findings must show a condition that would reasonably be expected to produce that pain or those other symptoms." *Moothart v. Bowen*, 934 F.2d 114, 117 (7th Cir.1991) (emphasis in original). Also, "[w]here diagnoses are not supported by medically acceptable clinical and laboratory diagnostic techniques, this court need not accord such diagnoses great weight." *Veal v. Bowen*, 833 F.2d 693, 699 (7th Cir.1987). The Secretary must consider "all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand." *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984).

The ALJ found that plaintiff Edwards was not disabled because she failed to prove that she had a medically determinable impairment that would prevent her from performing sedentary work. The plaintiff first argues that the ALJ's decision is not supported by substantial evidence because the ALJ rejected the diagnoses and opinions of Dr. Hisgen, the plaintiff's treating physician. Dr. Hisgen diagnosed the plaintiff as suffering from myofascial pain, chronditis, postphlebitic syndrome, fibrositis, and headaches caused by a flexion-extension (whiplash) injury. However, as the ALJ correctly points out, Dr. Hisgen failed to support his diagnoses with objective clinical findings, and he failed to support his disability opinions with acceptable medical evidence of an impair-

ment that could be expected to produce the degree of limitation alleged by Edwards. In fact, many of Dr. Hisgen's diagnoses appear to be conclusory statements documented in an attempt to explain Edwards' subjective complaints of pain and tenderness in her neck, chest, and right leg.

The plaintiff contends that her case is analogous to *Martin v. Sullivan*, 750 F.Supp. 971 (S.D.Ind.1990), and *Gude v. Sullivan*, 956 F.2d 791 (8th Cir.1992), because the ALJ here erred by failing to credit Dr. Hisgen's findings. However, in both cases cited, the treating physicians definitively diagnosed the claimants with a medically determinable impairment—systemic lupus erythematosus. Dr. Hisgen's findings lack the medical evidentiary support that existed in both cases cited. Because his objective medical findings do not support Dr. Hisgen's opinion that Edwards is disabled, the ALJ was entitled to discount this opinion. *See Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir.1989); *Veal*, 833 F.2d at 699; *Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir.1989) (where treating physician's observations were in fact "mere recitations of ... complaints," rather than objective medical findings, the ALJ properly discounted his opinion).

■ Our recent decision in *Micus v. Bowen*, 979 F.2d 602 (1992), makes clear that there is no presumption of bias in a treating physician's disability opinion. *Id.* at 609. Rather, the ALJ has the ability, as the trier of fact, to consider the physician's possible bias. We stated that "[t]he ability to consider bias ... is not synonymous with the ability to blithely reject a treating physician's opinion or to discount that physician's opportunity to have observed the claimant over a long period of time." *Id.* The ALJ in this case did not discount Dr. Hisgen's opinion due to a presumption of bias. Instead, the ALJ found that there was a lack of objective medical findings by Dr. Hisgen to substantiate his determination that the plaintiff was totally disabled. Accordingly, the ALJ's decision does not violate the standard established in *Micus*.

The plaintiff next argues that Dr. Shannon's findings corroborated those of Dr.

Hisgen. Dr. Shannon observed that Edwards' gait was not normal and expressed some concern that she might suffer from chronic compartment syndrome, a condition in which increased pressure in a confined anatomical space adversely affects the circulation and threatens the function of tissues. However, like Dr. Hisgen, Dr. Shannon was unable to document any medically determinable impairment of the plaintiff. The plaintiff also argues that Dr. Alt's findings substantiate the diagnosis of Dr. Hisgen that the plaintiff is disabled. After his evaluation of Edwards, Dr. Alt reported that she had a reduced range of motion in her neck, although he found no swelling in her neck, no edema in her extremities, no coldness in her feet, and no evidence of venous stasis ulcers. He further found that her calves were equal in size. Dr. Alt determined that Edwards' pain was possibly of myofascial origin and that she may have fibrositis or chronic compartment syndrome. He hastened to add, however, that there was a paucity of clinical findings to support her claim of incapacitation and concluded that, based upon her complaints and history more than on physical findings, Edwards seemed totally disabled. The ALJ properly rejected Dr. Alt's conclusion of disability because this finding, like Dr. Hisgen's opinion, was unsupported by the statutorily-required objective medical evidence and clinical findings. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991).

█ The plaintiff also asserts that because the ALJ's assessment of her credibility was "patently wrong," the Secretary's decision must be reversed. *Stuckey v. Sullivan,* 881 F.2d 506 (7th Cir.1989). However, we have recognized that "determinations of credibility often involve intangible and unarticulable elements which impress the ALJ, that, unfortunately leave 'no trace that can be discerned in this or any other transcript.' " *Kelley v. Sullivan,* 890 F.2d 961, 964 (7th Cir.1989) (citations omitted). Thus, it is generally understood that a reviewing court does not reconsider credibility determinations made by the ALJ so long as they find some support in the record. *Anderson v. Sullivan,* 925 F.2d 220, 222 (7th Cir.1991).

In finding that Edwards' complaints of disabling pain were not credible, the ALJ considered the following factors: (1) medical evidence failed to demonstrate a condition that would be expected to cause the degree of pain alleged; (2) the ALJ's observation of Edwards at the hearing; (3) Edwards' present activities, which included making meals, folding laundry, going grocery shopping with her husband, and attending church; and (4) Edwards' pending personal injury action. Therefore, the ALJ's credibility determination is sufficiently supported by the record and is not "patently wrong." Moreover, we have held that *"[w]hether credible or not in her testimony about her subjective symptoms,* [a claimant] is not entitled to benefits if the objective medical evidence failed to show a medical condition that would reasonably be expected to cause those symptoms." *Moothart,* 934 F.2d at 117 (emphasis in original).

█ The plaintiff's contention that the ALJ committed clear error of law when he discounted the Social Security Rule (SSR) 88–13 criteria is similarly without merit. SSR 88–13 is an interpretive ruling which provides guidance on the consideration to be given to symptoms, including pain, in evaluating disabilities under the Social Security Act. *Howell v. Sullivan,* 950 F.2d 343, 347 (7th Cir.1991). Under SSR 88–13, a subjective complaint of pain supported by objective medical evidence may not be discounted. *Id.* at 348. However, as the district court properly found, it was unnecessary for the ALJ to address the SSR 88–13 criteria in this case because there were no medical findings to confirm a condition which could cause the disabling pain alleged by Edwards.

█ Edwards asserts that the ALJ's rejection of the findings of her vocational expert, Mr. John Meltzer, also constitutes clear error of law. The ALJ rejected Meltzer's determination (that there was no job in the competitive job market which Edwards was capable of performing) because Meltzer based his conclusion on his interpretation of the medical evidence and because the report was prepared for the pur-

pose of litigation. Since the ALJ properly rejected the unsupported medical opinions of Dr. Hisgen on which the vocational report largely relied, the ALJ was also entitled to reject Meltzer's findings.

 Finally, Edwards argues that her impairments prevent her from performing sedentary work. Sedentary work involves primarily sitting and minimal lifting. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (1991). We have noted previously that "[a] claimant can do sedentary work if he [or she] can (1) sit up, (2) do occasional lifting of objects up to ten pounds, and (3) occasionally walk or stand." *Kapusta v. Sullivan,* 900 F.2d 94, 96 (7th Cir.1989). After determining Edwards' residual functional capacity, the ALJ found that she could not return to her past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) (1991). The ALJ then considered her age, education, and experience and applied the Medical–Vocational Guidelines (the grids). *See* 20 C.F.R. pt. 404, subpt. P, App. 2 (1991). Rule 201.25 of the Medical–Vocational Guidelines directs that an individual with Edwards' age, education, and past work experience be found not disabled because she can perform a significant number of sedentary jobs in the national economy. Despite the plaintiff's allegations that the guidelines should not have been applied because she had a significant non-exertional impairment, the ALJ's application of the grids was appropriate in this case. We have held that "the disabling extent of a claimant's pain is a question of fact for the ALJ, and if pain is found not to interfere with the claimant's ability to work, then the grids may be used." *Kapusta,* 900 F.2d at 97.

## III.

## CONCLUSION

Due primarily to (1) the lack of objective medical evidence to support Edwards' claims of disabling pain; (2) the determinations of reviewing physicians, Drs. Shearer and Callear, that Edwards retained the residual functional capacity to work; (3) the ALJ's determination that Edwards' complaints of pain were not credible; and (4)

the ALJ's proper application of the grids, the ALJ's conclusion that Edwards was not disabled and could perform a full range of sedentary work is supported by substantial evidence. Accordingly, the decision of the district court upholding this determination is AFFIRMED.