Jessie RIGGINS, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 94 C 4420.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 27, 1995.

Barry Alan Schultz, Chicago, IL, for plaintiff.

Michele Szary Schroeder, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Jessie Riggins ("Mr. Riggins"), applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on February 13, 1992. His claim was denied initially and upon reconsideration by State agency personnel. After a hearing on the matter, Administrative Law Judge ("ALJ") Edward B. Pappert found that Mr. Riggins was not disabled. The Appeals Council denied Mr. Riggins' Request for Review. Consequently, the ALJ's decision became the final decision of the Secretary of Health and Human Services ("Secretary"). 20 C.F.R. § 404.981; *Herron v. Shalala,* 19 F.3d 329, 332–33 (7th Cir.1994) (citation omitted). On July 20, 1994, Mr. Riggins brought this action to seek judicial review of the final decision of the Secretary pursuant to 42 U.S.C. § 405(g). Both parties now move for summary judgment. For the reasons set forth herein, the Secretary's motion is granted, and Mr. Riggins' motion is denied.

### Facts

At the time of the hearing before the ALJ, Mr. Riggins was fifty-two years old. Tr. 29.[1] He has an eighth grade education. Tr. 32. From 1978 to 1991, Mr. Riggins was employed as a construction worker, a job in which he regularly lifted and carried twelve-foot planks of drywall weighing more than one hundred pounds. Tr. 33, 100. On November 15, 1991, Mr. Riggins ceased working as a construction worker because of his problems with the gout. Tr. 33. He has not been employed since that date. Tr. 33.

At the hearing before the ALJ, Mr. Riggins testified that the gout affects him in both feet, ankles, knees, elbows, and fingers. Tr. 34–35. His condition began approximately fifteen or sixteen years ago, but has recently deteriorated. Tr. 35. Mr. Riggins testified that he has experienced six or seven attacks of the gout since he left work. Tr. 35. He takes Colchicine and Alupirnol on a daily basis for his gout condition. Tr. 38–39. Mr. Riggins also suffers from diabetes, which causes dizziness when he walks long distances or is around heights. Tr. 52–53. At present, his daily activities include watching television, helping clean and dust, cooking, washing the dishes, cutting the lawn, and working in the garden. Tr. 45–46.

Since November, 1991, Mr. Riggins has been treated by physicians at the Rush Anchor Clinic in Oak Park. The medical records produced at the hearing reflect that Mr. Riggins had an acute attack of gout on November 8, 1991. Tr. 130. On December 5, 1992, he experienced swelling in both toes and had difficulty walking. Tr. 184. The impression was a gout attack in both feet and ankles. Tr. 184. On December 31, 1991, Mr. Riggins again complained of pain in his toes, swelling, and difficulty in walking. Tr. 183. On February 14, 1992, Dr. Mary Schraufnagle ("Dr. Schraufnagle") noted that Mr. Riggins was still having problems with gouty arthritis, with the latest flare occurring in the left knee. Tr. 185. On March 6, 1992, Dr. Schraufnagle noted that Mr. Riggins'

---

1. References to the Certified Administrative Record are designated as "Tr."

gout condition had significantly improved since his prior two gout attacks, that the edema had decreased significantly, and that Mr. Riggins was able to walk without any assistance despite the fact that he experienced some limping. Tr. 130. On March 16, 1992, Dr. Delfin Santos ("Dr. Santos") and Dr. Charlotte Harris ("Dr. Harris") examined Mr. Riggins and found evidence of primary osteoarthritis in his hands, 5–degree flexion contracture of the right elbow, and synovitis in his left ankle.[2] Tr. 175. The assessment was polyarticular gout. Tr. 175.

On March 16, 1992, Dr. William Conroy ("Dr. Conroy") executed a residual physical functional capacity assessment, concluding that Mr. Riggins had no exertional, postural, manipulative, visual, communicative, or environmental limitations. Tr. 131–38. On April 20, 1992, Drs. Santos and Harris reexamined Mr. Riggins, who complained of mild pain in his right toe. Tr. 125. Drs. Santos and Harris noted that Mr. Riggins showed no evidence of active synovitis, that the swelling had gone, and that the pain had reduced. Tr. 125, 175. On July 22, 1992, Mr. Riggins again complained of pain in his big right toe. Tr. 153. The examining doctor noted that his feet still swelled intermittently. Tr. 153. On August 18, 1992, Mr. Riggins experienced pain in his left ankle, and an examining physician noted synovitis therein. Tr. 127. On September 9, 1992, and again on December 11, 1992, Mr. Riggins complained of blurry vision caused by recently-diagnosed diabetes. Tr. 164, 170. The examining physician suspected that the cause of the blurry vision was poor control of diabetes. Tr. 170–71. On February 17, 1993, Mr. Riggins complained of increased urination, increased thirst, and hand pain due to gout. Tr. 172. On February 19, 1993, Mr. Riggins reported that he felt better, that the urination and thirst improved, and that he still got intermittent gout, although it was "not as bad as before." Tr. 174.

The ALJ called upon Mr. Myer Klein ("Mr. Klein"), a vocational expert, to testify at the hearing. Mr. Klein described Mr.

Riggins' past work as unskilled and heavy. Tr. 56. In response to a hypothetical question posed by the ALJ, Mr. Klein testified that a claimant with Mr. Riggins' qualifications and medical conditions could not perform Mr. Riggins' past relevant work, but could perform other jobs in the medium and light exertional levels. Tr. 58–60. In the light exertional level, such a claimant could perform work as a toy or sporting goods assembler or a hand packer, for which there are 20,000 and 15,000 positions respectively in the six-county metropolitan area. Tr. 60. In the medium exertional range, the claimant could perform work as a cleaner, for which there are approximately 60,000 positions in the local economy. Tr. 60. Mr. Klein also testified to his belief that a claimant who would miss an average of more than one day of work per month as a result of a physical problem might be unable to sustain his or her employment over an extended period of time. Tr. 57, 60–61.

After consideration of the entire record, ALJ Pappert concluded that Mr. Riggins was not "disabled" within the meaning of the Social Security Act. Tr. 18. He acknowledged that the medical evidence established that Mr. Riggins has severe gout, generally well controlled on medication, and diabetes mellitus, controllable on medication without significant end organ damage. Tr. 17. However, he also found that Mr. Riggins' subjective complaints were not credible as to the frequency of his gout attacks, that Mr. Riggins does not have an impairment or combination of impairments as defined by Social Security regulations, that Mr. Riggins has the residual functional capacity to perform medium work, and that there are a significant number of jobs in the national economy which Mr. Riggins could perform. Tr. 17–18.

### Discussion

#### A. Standard of Review

 The Social Security Act ("the Act") provides for limited judicial review of final decisions of the Secretary. 42 U.S.C. §§ 405(g), 1383(c)(3). The role of this Court

---

2. Primary osteoarthritis is a degenerative joint disease which is very common in older persons, especially affecting weight-bearing joints.

STEDMAN'S MEDICAL DICTIONARY, p. 1002 (5th ed. 1982). Synovitis is an inflammation of a synovi-

is limited to determining whether the decision of the ALJ is supported by substantial evidence in the record. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir.1993) (citations omitted); *Steward v. Bowen*, 858 F.2d 1295, 1297 (7th Cir.1988) (citation omitted).[3] In making this determination, the district court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the Secretary." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir.1994) (citation omitted). Rather, the court must affirm a decision supported by substantial evidence in the absence of an error of law. *Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir.1990) (citations omitted); *Edwards v. Sullivan*, 985 F.2d 334, 336–37 (7th Cir.1993).

## B. *Sequential Evaluation*

■ In order to qualify for SSI or DIB, a claimant must be disabled. *Pope v. Shalala, supra*, 998 F.2d at 477. The Act defines a "disabled" individual as one who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. To satisfy this definition, an individual must have a severe impairment which makes him or her unable to perform his or her previous work or any other substantial gainful activity which exists in the national economy. 20 C.F.R. § 416.905.

Social Security regulations require the factfinder to follow a five-step sequential inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)-(f). The Seventh Circuit has summarized the test as follows:

The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job.

*Pope v. Shalala*, 998 F.2d at 477–78 (citing *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir.1992); *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir.1984)).

In the present case, ALJ Pappert applied the sequential evaluation and decided the case at Step Five. He found that Mr. Riggins had not engaged in substantial gainful employment since November 15, 1991; that the medical evidence established that Mr. Riggins has severe gout, generally well controlled on medication; that Mr. Riggins did not suffer from an impairment or combination of impairments listed in or equivalent to one listed in the applicable regulations; and that Mr. Riggins could not perform his past work as a general construction laborer. Tr. 17. He then found that Mr. Riggins has the residual functional capacity to perform medium work[4] and that there are a significant number of jobs in the national economy which Mr. Riggins could perform. Tr. 17–18. Consequently, the ALJ concluded that Mr. Riggins was not "disabled" within the meaning of the Act and the applicable regulations. Tr. 18.

---

al membrane, especially that of a joint. *Id.,* p. 1398.

**3.** The Act provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ..." 42 U.S.C. § 405(g). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir.1993) (citation omitted). " 'Substantial evidence may

be something less than the greater weight or preponderance of the evidence' and a finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion." *Oyen v. Shalala*, 865 F.Supp. 497, 507 (N.D.Ill.1994) (citations omitted).

**4.** Medium work is defined as lifting no more than 50 pounds at a time and frequently lifting up to 25 pounds. See 20 C.F.R. § 404.1567(c); *Limberopoulos v. Shalala*, 17 F.3d 975, 978 (7th Cir.1994).

### C. *Decision of the ALJ*

■ Mr. Riggins argues that the Secretary failed to meet her burden of demonstrating that he can perform other work that exists in the national economy. Mr. Klein, the vocational expert, testified that a claimant who would be absent from work for an average of more than one day per month might be unable to sustain employment over an extended period of time. Mr. Riggins contends that the record supports an inference that he experienced gouty flares an average of 4.25 days per month during the period beginning November 15, 1991 (his last day of work) and ending March 5, 1993 (the date of his hearing), an inference which compels a finding that Mr. Riggins cannot perform other work in the national economy in light of Mr. Klein's testimony. Accordingly, Mr. Riggins maintains that the ALJ erred in finding that he is not disabled.

■ However, ALJ Pappert discredited Mr. Riggins' testimony concerning the frequency and severity of his gout attacks because it contradicted the medical record. Tr. 17. "Determinations of credibility often involve intangible and unarticulable elements which impress the ALJ, that, unfortunately leave 'no trace that can be discerned in this or any other transcript.'" *Edwards v. Sullivan, supra,* 985 F.2d at 338 (citation omitted). Accordingly, a reviewing court may not reconsider an ALJ's factual and credibility determinations as long as they find some support in the record. *Id.* (citing *Anderson v. Sullivan,* 925 F.2d 220, 222 (7th Cir.1991)). If reasonable minds may differ on the outcome of conflicting evidence, the ALJ's decision must prevail. *Grindle v. Sullivan,* 774 F.Supp. 1501, 1506 (N.D.Ill.1991) (citation omitted). The claimant bears the burden of demonstrating that the ALJ's determinations are "patently wrong." *Herr v. Sullivan, supra,* 912 F.2d at 182 (citing *Kelley v. Sullivan,* 890 F.2d 961, 965 (7th Cir.1989)).

In concluding that Mr. Riggins exaggerated the frequency of his acute gout attacks, ALJ Pappert assessed the medical records. Specifically, ALJ Pappert discredited Mr. Riggins' April 21, 1992 statement that he was unable to wear shoes because of the gout in light of contemporaneous medical records indicating only mild right toe pain, lack of swelling, pain noted to be "nothing like before," no synovitis in the ankles, and no acute flares of gout pain occurring during the two months prior to the examination. Tr. 15, 110, 125. He further discredited Mr. Riggins' testimony as to the frequency and severity of his gout attacks in light of medical records which revealed (1) only one gout attack involving severe pain, *i.e.* the August, 1992 episode,[5] and (2) no evidence to suggest that Mr. Riggins experiences acute gout attacks for more than one or two weeks per year. Tr. 16, 127. These findings, supported by the medical record, contradict Mr. Riggins' claim that his gout condition would cause him to be absent from work for an average of more than one day per month and thus unemployable.

ALJ Pappert also properly considered Mr. Riggins' testimony concerning his daily activities. *See Edwards v. Sullivan, supra,* 985 F.2d at 338; *Reynolds v. Bowen,* 844 F.2d 451, 454 (7th Cir.1988). Mr. Riggins testified that he cooks, cleans, dusts, washes dishes, watches the grandchildren, cuts the lawn, and works in the garden. Tr. 16, 46. Based on Mr. Riggins' testimony, Mr. Klein's testimony, and the record before him, ALJ Pappert found that Mr. Riggins is capable of standing and walking for long periods of time, using his hands for fine and gross manipulation, and lifting fifty pounds occasionally and twenty pounds frequently when he is not experiencing an acute gout attack. Tr. 16. Accordingly, the ALJ concluded that Mr. Riggins is capable of performing medium work except for working around heights or with dangerous moving machinery. Tr. 17.

This determination is supported by the record. In addition to the ALJ's observations discussed above, the record reveals that, in March, 1992, Dr. Schraufnagle noted that Mr. Riggins' gout condition had significantly improved, that the edema had decreased significantly, and that he could walk without any assistance. Tr. 130. In March, 1992, Dr. Conroy concluded that Mr. Riggins had no exertional, postural, manipulative, vi-

---

**5.** He found that the other gout attacks involved only mild pain with slight tenderness. Tr. 16.

sual, communicative, or environmental limitations resulting from his gout condition. Tr. 131–38. The treatment notations in April, 1992 revealed only mild pain in the right toe and no swelling or synovitis in the ankles, wrists, and elbows. Tr. 125. The treatment notations in June, 1992 stated that Mr. Riggins was "doing pretty well," with occasional finger pain and a slightly tender right ankle. Tr. 126. The treatment notations for the autumn of 1992 focus on Mr. Riggins' complaints of blurry vision and dizziness caused by recently-diagnosed diabetes; the ALJ concluded that these symptoms were attributable to Mr. Riggins' failure to follow his own treatment regimen. Tr. 16, 170–71. In February, 1993, Mr. Riggins himself reported that he felt better and that his intermittent gout had improved. Tr. 174. This record clearly supports the ALJ's findings.

### Conclusion

As the foregoing discussion demonstrates, Mr. Riggins has not met his burden of showing that the factual and credibility determinations of the ALJ are patently wrong. On the contrary, the Court finds that these determinations are supported by the record. Accordingly, the ALJ's decision must be affirmed, and the Secretary's motion for summary judgment is granted. Mr. Riggins' motion for summary judgment is denied.