**Richard E. WARGOWSKY, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

**No. 94 C 1993.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 20, 1995.

Susan E. Pigott, David B. Menchetti, Cullen, Haskins, Nicholson & Menchetti, P.C., Chicago, IL, for plaintiff Richard Wargowsky.

Ramune Rita Kelecius, U.S. Attys. Office, Chicago, IL, for defendant Donna Shalala, Secretary of Health and Human Services of U.S.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Richard Wargowsky ("Mr. Wargowsky"), applied for a period of disability and Disability Insurance Benefits ("DIB") on December 2, 1991. His claim was denied initially and upon reconsideration by State agency personnel. After a hearing, Administrative Law Judge ("ALJ") John L. Mondi found that Mr. Wargowsky retained the residual functional capacity for light work not involving unprotected heights or dangerous machinery. The Appeals Council denied Mr. Wargowsky's request for review. Consequently, the ALJ's decision became the final decision of the Secretary of Health and Human Services ("Secretary"). 20 C.F.R. § 404.981; *Herron v. Shalala*, 19 F.3d 329, 332-33 (7th Cir.1994) (citation omitted). On March 30, 1994, Mr. Wargowsky brought the present action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Secretary. Both parties have filed motions for summary judgment. For the reasons set forth below, the Secretary's motion is granted, and Mr. Wargowsky's motion is denied.

### Facts

At the time of the hearing before the ALJ, Mr. Wargowsky was forty-six years old. He is married and has one eighteen year old son who lives at home. Mr. Wargowsky's education consists of high school and on the job training for various specialties in fire fighting. From 1968 to 1991, Mr. Wargowsky was a fire fighter for the Village of Bedford Park, a job requiring a large amount of heavy lifting. On May 29, 1991, Mr. Wargowsky was involved in a motor vehicle accident. He has not been employed since that date.

At the hearing before the ALJ, Mr. Wargowsky testified that due to the accident, he suffers from a back injury consisting of a herniated disc, sciatic nerve problems down his left leg causing his leg to occasionally jump, dizziness, nausea, lack of concentration and ringing in the ears. He testified that he has difficulty walking, standing or sitting for prolonged time periods. He says he can do a limited amount of climbing stairs, bending or stooping. He said he is nervous, depressed and often does not sleep well, sometimes sleeping only every other night. Mr. Wargowsky testified that he takes allergy medicine and a dozen aspirin a day.

Mr. Wargowsky also testified that he can lift about 35 pounds, and his weight and appetite are normal. He works out regularly using circuit training to strengthen his back as prescribed by his doctor; cuts the grass in his small yard; occasionally cooks, vacuums and does laundry; drives, though not at night or on overcast days; and collects model trains and antiques. At present, Mr. Wargowsky sees his primary physician, Dr. Robert E. Eilers ("Dr. Eilers"), every two to three months and a clinical psychologist, Dr. Denise Gehrling ("Dr. Gehrling"), once a month.

The medical records produced at the hearing indicate that following the automobile accident on May 29, 1991, Mr. Wargowsky received emergency room treatment and then left the hospital. Mr. Wargowsky began seeing a physical therapist in June, 1991 who recorded that he appeared to have severe lumbar muscle strain resulting in pain and spasms. When discharging Mr. Wargowsky from physical therapy in July, 1991, the therapist noted that he had only a mild ache in his back which would work itself out with time.

An MRI of Mr. Wargowsky's lumbar spine taken around this time revealed a mild disc bulge at the L4–5 disc level, and an EMG of his lower extremities and low back suggested mild left L5 root irritation. A myelogram [1] and CT scan done in October, 1991 were normal.

In November, 1991, Mr. Wargowsky began treatment with Dr. Eilers. Dr. Eilers' impression was that Mr. Wargowsky's symptoms were most consistent with a myofascial pain syndrome secondary to his strain/sprain injury in the motor vehicle collision and with possible labyrinthine dysfunction.[2] An MRI of Mr. Wargowsky's brain conducted in January, 1992 was normal.

In February and March, 1992, Dr. Denise Gehrling ("Dr. Gehrling"), a clinical psychologist, examined Mr. Wargowsky. Mr. War-

gowsky's performance was normal for perceiving speech and sounds, sensory motor integration and complex problem solving; his performance was mildly impaired for maintaining attention and concentration, cognitive flexibility and sensory perceptual functions for the left hand; and his performance was seriously impaired for psychomotor speed. Mr. Wargowsky's performance on tasks measuring learning and memory indicated significant impairment in concentration, long term recall and recall of verbally presented passages. His reading, spelling and arithmetic skills were in the high average range. Dr. Gehrling concluded that overall, Mr. Wargowsky's intellectual functioning and academic achievement were in the high average range but that he suffered from a cerebral dysfunction consistent with a closed head injury.

Dr. H.G. Frank ("Dr. Frank"), a neurologist, reported on March 5, 1992 that MRI scans of Mr. Wargowsky's lower back showed some bulging of the discs and perhaps a small herniated disc. An ENG revealed some mild left canal paresis, and MRI scans of the head and an EEG were unremarkable. Dr. Frank's neurological examination indicated that Mr. Wargowsky was intact to routine testing of memory, orientation, judgment, affect, thought processes and fund of knowledge. Dr. Frank's impression was possible post-traumatic labyrinthine dysfunction with ENG suggesting left canal paresis, subjective tinnitus (ringing in the ears), mechanical low back pain and a history of sciatica with no objective evidence of myelopathy, radiculopathy or neuropathy. Dr. Frank noted:

I don't think any further neurologic testing is indicated at this time. It seems that this patient is really quite healthy overall. I don't see any limitations at this point in time that would restrict him from returning to work in any capacity whatsoever. The injury, if related to the accident, in the left labyrinthe should not get worse

---

1. A myelogram is an x-ray photograph of the spinal cord. THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, p. 1271 (2d ed. 1987).

2. Myofascial pain syndrome relates to myofascitis which is inflammation of a muscle. STEDMAN'S

MEDICAL DICTIONARY, p. 754 (5th ed. 1982). Labyrinthine dysfunction or labyrinthitis means an inflammation of the labyrinth (the internal ear), sometimes accompanied by vertigo. *Id.*, p. 754.

with time. More likely it will improve with time.

Around this same time, Mr. Wargowsky had a functional capacity assessment administered by an occupational therapist and a physical therapist which indicated that he was capable of performing light-medium work.

In May, 1992, Dr. Anne Morgan ("Dr. Morgan"), a psychologist, conducted a mental residual functional capacity assessment in which she concluded that Mr. Wargowsky had a psychological or behavioral abnormality associated with a dysfunction of the brain as evidenced by memory impairment, change in personality and disturbance in mood. Dr. Morgan reported that Mr. Wargowsky was moderately limited in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, carry out detailed instructions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Morgan further noted that Mr. Wargowsky was capable of simple routine tasks within his physical capacities.

In June, 1992, Dr. Robert L. Tentler ("Dr. Tentler"), a neurologist, conducted another neurological examination of Mr. Wargowsky on behalf of the State of Illinois. Dr. Tentler concluded that there was no neurological basis for a herniated disc diagnosis. He also noted that although Dr. Gehrling's psychological report implied that Mr. Wargowsky's mental functions were impaired, there were no physical findings supporting Dr. Gehrling's diagnosis. Dr. Tentler diagnosed Mr. Wargowsky as suffering from subjective labyrinthitis.

Dr. Gehrling's report of April, 1993 noted that she was seeing Mr. Wargowsky on a monthly basis and that his rehabilitation potential was good.

ALJ Mondi called upon Thomas Grzesik ("Mr. Grzesik"), a vocational expert, to testify at the hearing. Mr. Grzesik described Mr. Wargowsky's past work as a fire fighter as very heavy and low skilled. The ALJ asked Mr. Grzesik to assume a hypothetical individual who was Mr. Wargowsky's age, possessed his education and work experience, was limited to light work, was unable to work at unprotected heights or around dangerous machinery, and possessed the mental capacities described by Dr. Morgan in her mental residual functional assessment. Mr. Grzesik testified that such an individual would not be able to perform Mr. Wargowsky's past work as a fire fighter but would be able to perform a number of jobs in the national economy including office cleaner (6000 jobs in the region), material handler (5000 jobs in the region) and hand packager (6500 jobs in the region).

After consideration of the entire record, ALJ Mondi concluded that Mr. Wargowsky was not "disabled" within the meaning of the Social Security Act. He acknowledged that the medical evidence established that Mr. Wargowsky has been diagnosed with myofascial pain syndrome and labyrinthine dysfunction. But he also determined that Mr. Wargowsky's subjective complaints were not credible to the extent alleged and that Mr. Wargowsky does not have an impairment or combination of impairments as defined by Social Security regulations. ALJ Mondi concluded that although Mr. Wargowsky is incapable of performing his past work as a fire fighter, he has the residual functional capacity to perform light work,[3] and there are a significant number of jobs in the national economy which Mr. Wargowsky could perform.

## Discussion

### A. *Standard of Review*

The Social Security Act ("the Act") provides for limited judicial review of final decisions of the Secretary. 42 U.S.C. §§ 405(g), 1383(c)(3). The role of this Court is only to determine whether the decision of the ALJ is

---

3. Light work is defined as lifting no more than 20 pounds at a time and frequently lifting up to 10 pounds. 20 C.F.R. § 404.1567(b).

supported by substantial evidence in the record. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir.1993) (citations omitted); *Steward v. Bowen*, 858 F.2d 1295, 1297 (7th Cir.1988) (citation omitted).[4] In making this determination, the district court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the Secretary." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994) (citation omitted). Rather, the court must affirm a decision supported by substantial evidence in the absence of an error of law. *Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir.1990) (citations omitted); *Edwards v. Sullivan*, 985 F.2d 334, 336–37 (7th Cir.1993).

## B. *Sequential Evaluation*

In order to qualify for DIB benefits, a claimant must be disabled. *Pope v. Shalala, supra*, 998 F.2d at 477. The Act defines a "disabled" individual as one who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. To satisfy this definition, an individual must have a severe impairment which makes him or her unable to perform his or her previous work or any other substantial gainful activity which exists in the national economy. 20 C.F.R. § 416.905.

Social Security regulations require the factfinder to follow a five-step sequential inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)–(f). The Seventh Circuit has summarized the test as follows:

> The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform her past work; and (5) whether

the claimant is capable of performing any work in the national economy. Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job.

*Pope v. Shalala, supra*, 998 F.2d at 477–78 (citing *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir.1992); *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir.1984)).

In the present case, ALG Mondi applied the sequential evaluation and decided the case at Step Five. He found that Mr. Wargowsky has not worked at substantial gainful activity since May 29, 1991; that the medical evidence established that Mr. Wargowsky has been diagnosed with a severe impairment, *i.e.*, myofascial pain syndrome and labyrinthine dysfunction; that Mr. Wargowsky did not have an impairment or combination of impairments listed in or medically equal to one listed in the applicable regulations; and that Mr. Wargowsky was unable to perform his past work as a fire fighter. He then found that Mr. Wargowsky has the residual functional capacity to perform light work and that there are a significant number of jobs in the national economy which Mr. Wargowsky could perform. Consequently, the ALJ concluded that Mr. Wargowsky was not "disabled" within the meaning of the Act and the applicable regulations.

## C. *Decision of the ALJ*

Mr. Wargowsky argues that the ALJ erred in finding that his subjective complaints were not credible and that he can perform work existing in the national economy. Mr. Grzesik, the vocational expert, testified that if an individual of Mr. Wargowsky's age, education and work experience suffered from the symptoms Mr. Wargowsky testified to having at

---

4. The Act provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ..." 42 U.S.C. § 405(g). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir.1993)

(citation omitted). "'Substantial evidence may be something less than the greater weight or preponderance of the evidence' and a finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion." *Oyen v. Shalala*, 865 F.Supp. 497, 507 (N.D.Ill.1994) (citations omitted).

the hearing, especially the deficits in concentration and memory of which Mr. Wargowsky complained, he would be unable to perform any job that exists in the national economy. Mr. Wargowsky contends that the record demonstrates that his subjective complaints were credible and therefore that he cannot do any work in the national economy. Accordingly, Mr. Wargowsky maintains that the ALJ erred in finding that he was not disabled.

■ "Determinations of credibility often involve intangible and unarticulable elements which impress the ALJ, that, unfortunately leave 'no trace that can be discerned in this or any other transcript.'" *Edwards v. Sullivan, supra,* 985 F.2d at 338 (citation omitted). Accordingly, a reviewing court may not reconsider an ALJ's credibility determinations as long as they find some support in the record. *Id.* (citing *Anderson v. Sullivan,* 925 F.2d 220, 222 (7th Cir.1991)). If reasonable minds may differ on the outcome of conflicting evidence, the ALJ's decision must prevail. *Grindle v. Sullivan,* 774 F.Supp. 1501, 1506 (N.D.Ill.1991) (citation omitted). The claimant bears the burden of demonstrating that the ALJ's determinations are "patently wrong." *Herr v. Sullivan, supra,* 912 F.2d at 182 (citing *Kelley v. Sullivan,* 890 F.2d 961, 965 (7th Cir.1989)).

■ ALJ Mondi found that the medical evidence in the record demonstrated that Mr. Wargowsky's subjective complaints were not credible. Specifically, the ALJ relied upon Dr. Frank's report of his neurological examination of Mr. Wargowsky in March, 1992. Dr. Frank noted that although Mr. Wargowsky had a history of mechanical low back pain and sciatica, there was no objective evidence of myelopathy, radiculopathy or neuropathy. Dr. Frank reported that Mr. Wargowsky was "really quite healthy overall" and did not recommend any further neurologic testing. Dr. Frank further stated that Mr. Wargowsky did not suffer from any limitations that would prevent him from returning to work "in any capacity whatsoever."

ALJ Mondi further discredited Mr. Wargowsky's testimony about his subjective symptoms based on the March, 1992 functional capacities assessment which indicated that Mr. Wargowsky had a physical tolerance for light-medium work and based on the fact that there was no medical evidence supporting Mr. Wargowsky's contention that he has trouble with prolonged walking. The ALJ also took into account the June, 1992 examination of Mr. Wargowsky by neurologist Dr. Tentler. Dr. Tentler reported that Mr. Wargowsky's neurological exam was normal, there was no neurological basis for a herniated disc and that he had subjective labyrinthitis. Dr. Tentler also noted that there were no physical findings that would support Dr. Gehrling's earlier psychological report implying that Mr. Wargowsky's mental functions were impaired.

ALJ Mondi considered Mr. Wargowsky's testimony concerning his daily activities.[5] Mr. Wargowsky testified that he cuts the grass in his small yard, drives his car during the day and in clear weather, vacuums and goes to the grocery store. His only medication is aspirin.

ALJ Mondi's determination is supported by the evidence he relied upon and by the following additional medical evidence in the record. The physical therapist who discharged Mr. Wargowsky from therapy in July, 1991 noted that Mr. Wargowsky suffered from only a mild ache in his back which would work itself out with time. After examining Mr. Wargowsky, Dr. Frank concluded that Mr. Wargowsky was intact to routine testing of memory, orientation, judgment, affect, thought processes and fund of knowledge. Dr. Morgan determined that Mr. Wargowsky was only moderately limited in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, carry out detailed instructions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately

---

5. The ALJ properly considered this evidence. *See Edwards v. Sullivan, supra,* 985 F.2d at 338; *Reynolds v. Bowen,* 844 F.2d 451, 454 (7th Cir. 1988).

to changes in the work setting. Dr. Morgan further concluded that Mr. Wargowsky was capable of routine tasks within his physical capacity. Moreover, Mr. Wargowsky works out regularly using circuit training to strengthen his back, occasionally cooks and does laundry and actively collects model railroads. The record clearly supports ALJ Mondi's findings.

### Conclusion

For the reasons set forth above, Mr. Wargowsky has not met his burden of demonstrating that the ALJ's credibility determination was patently wrong. On the contrary, the Court finds that the record supports his determination. Accordingly, the ALJ's decision must be affirmed. The Secretary's motion for summary judgment is granted, and Mr. Wargowsky's motion for summary judgment is denied.