**Jack A. DEITEMEYER,**
**Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Defendant–Appellee.**

**No. 02–2962.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 29, 2003.

Decided April 21, 2003.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

ORDER

Jack A. Deitemeyer applied for Social Security Disability Insurance Benefits ("DIB") in March 1999, claiming that pain in his left hip and side had prevented him from working since October 1996. Deitemeyer's claim was denied initially, upon reconsideration, and after a hearing before an administrative law judge. The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner of Social Security. The district court affirmed, and Deitemeyer now appeals. Because the ALJ's decision is supported by substantial evidence, we affirm the judgment of the district court.

Deitemeyer, who was 51 years old at the time of the ALJ's decision, has a GED and an associate's degree in electronics. In 1967 he shattered his left femur in an automobile accident. The accident did not prevent him from working, and he did so in various capacities for at least fifteen years at Dana manufacturing plant. But in 1996 pain in his left hip became a problem.

That year Deitemeyer began seeing Dr. Alois E. Gibson at Eastern Indiana Orthopedics, who treated him until 1998. During that period Dr. Gibson took several x-rays, a bone scan, and a magnetic resonance imaging (MRI) in an attempt to determine the cause of Deitemeyer's pain. None of the tests revealed a condition that could be expected to cause the kind of severe pain Deitemeyer described. Unsure why Deitemeyer was experiencing such pain, Dr. Gibson referred him to orthopaedic surgeon Dr. Jeffery L. Pierson.

Dr. Pierson began treating Deitemeyer in December 1996. He found Deitemeyer's previous diagnostic images inconclusive, so he recommended several additional procedures in an attempt to pinpoint the cause of Deitemeyer's pain. None of the tests revealed anything that explained Dei-

temeyer's symptoms well, so Dr. Pierson joined Dr. Gibson's tentative diagnosis of early osteoarthritis of the left hip (too early to even consider a joint replacement) and wrote Deitemeyer's employer to that effect in January 1997. In his letter to Dana, Dr. Pierson opined that there were no further treatment options that would significantly improve Deitemeyer's symptoms. He reported that because Deitemeyer "finds his symptoms intolerable after standing [for] any substantial lengths of time," he would probably be "incapable of returning to his previous level of work unless his symptoms spontaneously improve" on account of the "prolong[ed] periods of standing" his work required.

In February 1997 Deitemeyer returned to Dr. Gibson, who essentially confirmed Dr. Pierson's diagnoses and recommendations, noting that unless Dana restricted his work, Deitemeyer could not continue to work there. Over the next year, Deitemeyer continued periodically to see Dr. Gibson, who obtained two more x-rays that revealed no significant changes to Deitemeyer's hip.

In March 1999 Deitemeyer filed his DIB application claiming that arthritis in his hip and side rendered him unable to work. In conjunction with the application, Dr. Pierson filled out a "Rest Questionnaire." He checked a box on the questionnaire to indicate that if Deitemeyer returned to work he would need to rest for twenty minutes per hour. Repeating his earlier comments to Deitemeyer's employer, Dr. Pierson explained that such a restriction was necessary because Deitemeyer found his symptoms intolerable after standing for substantial periods and could probably not return to his former level of work. The other boxes that Dr. Pierson checked on the form reflect his opinion that Deitemeyer suffered "moderate" pain that "occasionally" interfered with his ability to concentrate; that Deitemeyer could sit upright on a sustained basis; that he experienced no swelling in his lower extremities; that he did not need to elevate his legs daily; and that he could not stand or walk six of eight hours in a day on a sustained basis.

On May 15, 1999, a state agency medical consultant reviewed the evidence and completed a "physical residual functional capacity" ("RFC") form documenting that Deitemeyer could occasionally lift and/or carry fifty pounds, could frequently lift and/or carry twenty-five pounds, could stand and/or walk for about six hours in an eight-hour workday, and could sit for six hours with unlimited ability to push and/or pull. The medical consultant also noted that Deitemeyer's subjective complaints of pain were only partially credible: although his allegations were documented, his pain "appears out of proportion to the objective evidence."

In December 1999 certified rehabilitation counselor Samuel I. Goldstein, Ph.D., interviewed Deitemeyer for a "vocational rehabilitation evaluation" in conjunction with his disability application. Based on his interview with Deitemeyer and a review of his medical records, Goldstein concluded that Deitemeyer's pain, inability to sit (for more than an hour) or walk (for more than thirty minutes), and his need to lie down during the day precluded him from working at all.

In March 2000 the ALJ held a hearing at which Deitemeyer testified and presented his medical records. Deitemeyer testified that he had discomfort in his hip most of the time, but that it usually intensified after fifteen or twenty minutes of walking. He further testified that he could stand only about fifteen to twenty minutes with pain and that he "might be able to go longer" but it would be painful to do so. He also guessed that he could probably sit

upright for about thirty minutes before the pain intensified.

The ALJ also solicited testimony from a vocational expert. The ALJ posed the following hypothetical to the VE: assuming a person of Deitemeyer's age, education, and work experience who was "limited ... to a light level of exertion. No competitive twisting and bending, no climbing or crawling, a person would need to change positions every 30 to 45 minutes to accommodate oneself. Preferably a person could work on a level surface. Are there jobs that would fit those limitations?" The VE responded that regionally there were approximately 6,000 unskilled ticket seller and assembler positions in the light category that would accommodate the hypothetical restrictions, and a total of 150,000 light, unskilled jobs and 15,000 sedentary jobs (assembler included) that would accommodate the hypothetical restrictions. But when Deitemeyer's non-attorney advocate incorporated twenty minutes of rest per hour (the limitation that Dr. Pierson had noted on the Rest Questionnaire) into the hypothetical, the VE stated that there would be no jobs available.

Applying the familiar five-step analysis used to evaluate disability claims, 20 C.F.R. §§ 404.1520, 416.920, the ALJ concluded that Deitemeyer (1) had not engaged in substantial gainful activity since October 1996, (2) had a severe impairment, (3) did not have an impairment or combination of impairments listed in the agency's regulations, (4) was not capable of performing his past work, (5) but could work in a significant number of jobs in the regional economy. In reaching his conclusion, the ALJ determined that Deitemeyer's own testimony was not entirely credible.

On appeal Deitemeyer argues that the ALJ's disability determination is not supported by substantial evidence because he incorrectly discredited Deitemeyer's testimony and the recommendations of his physicians and Dr. Goldstein. He claims this led the ALJ to formulate an RFC that did not fully reflect his limitations, and thus the VE improperly concluded that Deitemeyer could perform a substantial number of jobs in the regional economy.

We will uphold the ALJ's decision if he applied the correct legal standard and substantial evidence supported his decision. 42 U.S.C. § 405(g); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir.2002). We accept the ALJ's factual findings and do not reweigh the evidence, *Powers v. Apfel,* 207 F.3d 431, 434–35 (7th Cir.2000), which is "substantial" when a reasonable person would consider it adequate to support the ALJ's determination. *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir.2000).

■ Deitemeyer first argues that the ALJ improperly discredited his complaints regarding the severity of his impairments. The ALJ found that Deitemeyer's allegations of pain were neither supported by the objective medical evidence or clinical findings nor credible to the extent they suggested he was totally disabled. Without much elaboration, Deitemeyer asserts a number of errors in the ALJ's determination, including the following: (1) the ALJ concluded, contrary to the evidence in the record, that Deitemeyer receives only intermittent treatment for his symptoms; (2) without explanation, the ALJ found Deitemeyer's testimony of his "essentially sedentary lifestyle" to be "completely inconsistent with the evidence of record;" and (3) the ALJ ignored "medical signs and findings," 20 C.F.R. § 404.1529, that substantiated his disabling condition.

This court will affirm an ALJ's credibility determination unless the appellant demonstrates that it is patently wrong. *Pow-*

*ers*, 207 F.3d at 435. The ALJ's credibility determination must include reasons for the finding that are supported by record evidence and must be specific enough for the reviewing court to see the weight the ALJ gave to the claimant's testimony. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citing Social Security Ruling 96–7p).

In light of the objective medical evidence, the ALJ's credibility assessment is not patently wrong. As the ALJ noted, the MRIs demonstrated only minimal degenerative changes, Deitemeyer's arthritis had not progressed to the point that his doctors recommended surgery, he took only over-the-counter pain medication, only *prolonged* standing and walking aggravated his condition, and in April 1998 Dr. Gibson reported improvement in Deitemeyer's ability to stand and walk. Deitemeyer makes much of the ALJ's comments that Deitemeyer received only intermittent treatment, and that the "evidence of record" was inconsistent with Deitemeyer's testimony that he leads a sedentary lifestyle. We agree that the ALJ may have overstated the situation when he concluded that Deitemeyer sought only "intermittent" treatment and that his testimony of a sedentary lifestyle was contradicted by the evidence in the record: Deitemeyer did see either Dr. Gibson or Dr. Pierson numerous times between 1996 and 1998, and the ALJ does not point to the "evidence of record" undermining Deitemeyer's description of his sedentary lifestyle. But the ALJ's misstatements in these two areas do not invalidate his ultimate credibility conclusion, which was based on the lack of objective evidence and clinical findings. *See Shramek v. Apfel*, 226 F.3d 809, 813–15 (7th Cir.2000) (upholding ALJ's disability determination even though the factors he used to reject the claimant's credibility were not supported by the rec-

ord–the ALJ's error did not impact the outcome).

And Deitemeyer does not explain how the other medical evidence the ALJ allegedly overlooked, such as Deitemeyer's limp and a "documented impingement of the right L5 ganglion" reveals a condition that would cause disabling pain. *See Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993) ("[w]hether credible or not in her testimony about her subjective symptoms, [a claimant] is not entitled to benefits if the objective medical evidence failed to show a medical condition that would reasonably be expected to cause those symptoms.") (citation and internal quotations omitted). Nothing in the record suggests that Deitemeyer's limp caused him pain, and Dr. Pierson specifically noted that the L5 ganglion impingement did not correlate with Deitemeyer's pain. Thus, given the medical evidence cited by the ALJ in support of his credibility finding, we do not think the finding was patently wrong. *See Powers*, 207 F.3d at 435–36; *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995).

Deitemeyer next argues that the ALJ ignored his own allegation that pain made prolonged standing and walking difficult, and both Dr. Pierson's and Dr. Gibson's recommendations against prolonged standing and walking. This argument is meritless because the ALJ explicitly credited the doctors' opinions and Deitemeyer's testimony that prolonged standing or walking was painful for him. For instance, the ALJ explained that "it is clear that [Deitemeyer] has some limitations in his ability to perform prolonged standing and walking," and he also explained that the RFC "specifically prohibits prolonged standing and walking."

Deitemeyer also maintains that the ALJ erred by rejecting Dr. Pierson's "Rest Questionnaire" responses reflecting that Deitemeyer needed to rest twenty

minutes per hour and needed to lie down for substantial periods of time during the day. Deitemeyer relies heavily on *Clifford v. Apfel,* where we reversed an ALJ's decision to discount a physician's opinion because the ALJ "substituted his judgment" for the treating physician's without explaining why he believed the claimant's activities were inconsistent with the physician's opinion. 277 F.3d at 870–71.

The parties agree that Dr. Pierson is a "treating physician" whose opinion is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Johansen v. Barnhart,* 314 F.3d 283, 287 (7th Cir.2002). We have held, however, that an ALJ may give less weight to a doctor's report that is based solely on the claimant's "own statements about his functional restrictions at the time of the examination." *Diaz,* 55 F.3d at 308; *see also Dixon v. Massanari,* 270 F.3d 1171, 1178 (7th Cir.2001).

Unlike in *Clifford,* the ALJ here explained why he rejected Dr. Pierson's opinion that Deitemeyer needed frequent rest, *see* 20 C.F.R. § 404.1527(d)(2). The ALJ pointed out that (1) no objective test results supported such a restriction, (2) the restriction was based solely on Deitemeyer's subjective complaints, and (3) Dr. Pierson only indicated that Deitemeyer could probably not return to his *previous level of work.* (emphasis added). Thus, the ALJ's explanation more than met his obligation to "minimally articulate his reasons for crediting or rejecting evidence of disability." *Scivally v. Sullivan,* 966 F.2d 1070, 1076 (7th Cir.1992), and substantial evidence supports his decision to discount some of Dr. Pierson's "Rest Questionnaire" responses.

Deitemeyer next contends that substantial evidence does not support the ALJ's determination that he could perform light work jobs with the restrictions the ALJ incorporated in the RFC. Deitemeyer points out that the ALJ's hypothetical to the VE did not contain the restriction against prolonged standing or walking, and contends that if it had, he would have been reduced, at best, to sedentary work or no work at all. Whether Deitemeyer could perform only sedentary work matters here because under the "grids," the ALJ should find someone with Deitemeyer's age and past work experience who is limited to sedentary work disabled. *See* 20 C.F.R. pt. 404, subpt. P. App. 2, Table No. 1, rule 201.14.

The ALJ's hypothetical must incorporate all those limitations supported by the medical evidence in the record, *see Steele,* 290 F.3d at 942, and the ALJ's hypothetical did so here. At the hearing, the ALJ described an individual who "would need to change positions every 30 to 45 minutes to accommodate oneself." Although the hypothetical did not explicitly spell out the prohibition on prolonged standing and walking, the VE seemed to acknowledge the limitation when he responded that there were 150,000 light, unskilled jobs "that could be done sit/stand basic," in the region. Because the VE's testimony reflects an understanding of the impairments the ALJ found supported by the evidence—including the limitation on standing and walking—the ALJ could reasonably rely on it to conclude that Deitemeyer could work at a number of jobs at the light exertional level. *See Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir.1994); *Ehrhart v. Sec'y of Health & Human Servs.,* 969 F.2d 534, 540–41 (7th Cir.1992).

Finally, Deitemeyer contends that the ALJ rejected "out of hand" Dr. Goldstein's conclusion in his vocational rehabilitation evaluation that Deitemeyer could not work at all, which provided further evidence that

he could not perform even sedentary work. But the ALJ explained why he rejected Dr. Goldstein's vocational findings—his report was based only on a review of the medical evidence and Deitemeyer's subjective complaints. And further, Dr. Goldstein's general opinion that Deitemeyer could not work is not conclusive on the ultimate question of disability, which is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); *Clifford*, 227 F.3d at 870.

For the foregoing reasons, the judgment of the district court is AFFIRMED.