Pamela E. HERR, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant–Appellee.

No. 89–3108.

United States Court of Appeals, Seventh Circuit.

Argued July 11, 1990.

Decided Aug. 31, 1990.

Dennis H. Geisleman, Fort Wayne, Ind., for plaintiff-appellant.

Christina McKee, David H. Miller, Tina Nommay, Asst. U.S. Attys., Fort Wayne, Ind., Felisia A. Wesson, Charles R. Goldstein, Dept. of Health and Human Services, Region V, Office of the General Counsel, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Appellant Pamela Herr was denied disability benefits after an Administrative Law Judge held a hearing on her claim. She appealed to the district court, which affirmed the decision of the ALJ. She now appeals the district court's decision to this court, alleging once again that the ALJ committed reversible error in finding that she had the residual functional capacity to perform sedentary work.

## I.

Herr suffered a brain hemorrhage on April 17, 1985—two days after her twenty-third birthday. Before this date, she was working as a waitress and had previous experience as a bartender, cook, cashier and manager. After her hemorrhage she could not perform any of these jobs, but the Administrative Law Judge held that the skills she acquired from these jobs (such as book keeping, clerical and diplomacy skills) were transferrable to other positions. These skills, combined with Herr's age and eleventh-grade education, led the ALJ to

conclude that she was not entitled to benefits because she had the residual functional capacity to perform a limited number of sedentary jobs.

Herr's hemorrhage was caused by a congenital malformation in her brain. This malformation was surgically removed on May 7, 1985, and Herr was left temporarily paralyzed on her left side. With the help of physical therapy, this paralysis eventually dissipated, but Herr was left with some sensory deprivation in portions of her left arm and hand. This meant that Herr could move the muscles in her left arm and hand, but that, instead of moving her limb automatically, she had to look at her movements in order to control them. Visually monitoring her arm and hand movements in this way caused Herr to be fatigued, suffer headaches, and experience muscle spasms.

Testifying at the hearing were Herr, her mother, her vocational rehabilitation counselor, and a vocational expert. Herr's medical records were also submitted, including reports from Herr's treating physicians, occupational therapists, neurologists, psychologists, and a speech pathologist. Although agreeing that Herr met some of the eligibility requirements,[1] the ALJ held that Herr was not entitled to benefits because she retained the residual functional capacity to perform some sedentary work. In a thorough opinion, the district court affirmed on the grounds that the ALJ's decision was supported by substantial evidence.

## II.

Herr argues on appeal that the ALJ erred in finding that she had the ability to do sedentary work, and that even if she did have this capability at the time of the hearing, she claims the ALJ erred in not awarding her back-benefits for the period of total disability she allegedly experienced during her recuperation.

■ Disappointed claimants may appeal benefits denials to the federal courts, but our review of such claims is limited. In a recent case, this court explained the relevant standard:

> On appeal, our standard of review is essentially the same as the district court's; we must determine whether the Secretary's decision is supported by substantial evidence. *Garfield [v. Schweiker*, 732 F.2d 605, 607 (7th Cir.1984)]. Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 ... (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 ... (1938)). If the Secretary's decision is supported by substantial evidence, we must affirm, 42 U.S.C. § 405(g), unless the Secretary made an error of law. *Garfield*, 732 F.2d at 607 (citing *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir.1980)).

*Steward v. Bowen*, 858 F.2d 1295, 1297 (7th Cir.1988).

### A.

■ Turning first to the sedentary work issue, Herr argues that the ALJ failed to acknowledge that she is easily fatigued and therefore unable to work more that three or four hours a day, even in a sedentary job. Herr contends that this fact, accompanied by the vocational expert's estimation that she could only qualify for 10–20% of

---

1. The five-step inquiry is as follows:

   (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step, or on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops [the] inquiry and leads to a determination that the claimant is not disabled.

   *Steward v. Bowen*, 858 F.2d 1295, 1297 (7th Cir.1988) (quoting *Garfield v. Schweiker*, 732 F.2d 605, 607 n. 2 (7th Cir.1984)). The ALJ in Herr's case found that she was unemployed and unable to work in her old job, but found that her impairment, although severe, did not meet or exceed the listed impairments, and that she could perform some sedentary work.

available sedentary jobs because of the loss of her left arm, requires a conclusion that she is entitled to disability benefits.

It appears that Herr's argument relies on a selective reading of the record. When the entire record is considered, it is clear that the ALJ's decision denying Herr benefits was based on substantial evidence as that standard has come to be defined. First, the issue of fatigue was discussed fully at Herr's hearing and in the ALJ's decision; [2] thus, it is not true that the ALJ failed to consider this factor at all. Testimony favorable to Herr showed that she was easily fatigued when she was required visually to monitor her left upper extremity. Other symptoms, such as muscles spasms and migraine headaches, also accompanied extensive use of her left arm and hand.

In resolving conflicting evidence, however, the ALJ took into account facts that did not necessarily favor Herr's application. For example, although the vocational expert acknowledged that Herr became fatigued, he testified that Herr would still be able to perform a limited number of sedentary jobs that did not require bi-manual dexterity—jobs that could be performed by someone who had no ability to use a specific hand and arm. The vocational expert concluded that there were jobs in the na-

tional economy that Herr could do that would not require the use of two hands. Such jobs would therefore avoid inducing fatigue. The ALJ's decision, relying in part on the vocational expert's testimony,[3] was supported by substantial evidence in the record. As we have articulated in prior opinions, "this court may [not] reweigh the evidence. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." [4] *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987); *see also Reynolds v. Bowen*, 844 F.2d 451, 454 (7th Cir.1988).

■ The ALJ also had difficulty in fully crediting Herr's subjective complaints about fatigue and other symptoms. These complaints conflicted with Herr's testimony and demeanor at the hearing and with other evidence regarding her daily activities in caring for herself and her newborn baby.[5] In addition, a psychiatrist's report noted that Herr was frequently depressed and concluded that Herr had a tendency "to translate psychogenic or psychological stress and tension into physical feelings or symptoms." A psychiatrist's opinion that Herr tended to be "hypochondriacal and also somewhat hysterical or histrionic" pro-

2. The ALJ, in his final decision, summed up the evidence introduced at Herr's hearing as follows:

> The evidence as a whole shows that the claimant has several problems resulting from a stroke that she suffered in April 1985. She has some loss of coordination of the left arm and hand, and because of brain damage, cannot control her left arm and hand unless she can see what she is doing with it. Of course, the need to consciously control actions that, for most people, would be automatic, causes a great deal of fatigue when the claimant attempts to use her left arm and hand to a significant degree. However, there are jobs that a person would be able to do, even with total loss of function of the non-dominant arm and hand.

Decision of April 7, 1988, at 12.

3. Both parties agree that Herr was unable to perform the full range of sedentary work, and that therefore the ALJ could not rely solely on the grid to find her not disabled. *See Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987) (use of the grid may be inappropriate where claimant

suffers from nonexertional impairments). The ALJ acknowledged this when he stated that he used the grid only as a framework to determine Herr's eligibility. The ALJ therefore turned to the vocational expert's testimony to support his decision.

4. Herr offers a number of other fact-based arguments in her brief. These claims likewise rely on inferences and testimony favorable to her position without addressing the fact that disfavorable evidence was also introduced at the hearing that supports a finding that Herr was not disabled. Such disputes are for the ALJ to resolve. The existence of an evidentiary dispute, in and of itself, does not present a ground for reversing the ALJ's decision to credit one particular version of the events over another. *Reynolds v. Bowen*, 844 F.2d 451, 454 (7th Cir. 1988).

5. Herr became pregnant with her first child shortly after undergoing brain surgery in May 1985. She delivered by cesarean section in February 1986.

vided the ALJ with grounds to question whether Herr's testimony could be unqualifiedly credited. An ALJ's credibility determinations will be affirmed on appeal unless the appellant can demonstrate that they are "patently wrong." *Kelley v. Sullivan,* 890 F.2d 961, 965 (7th Cir.1989). Herr fails to meet this burden.

## B.

■ Herr's second argument on appeal is that the ALJ erred in not finding that she was entitled to back-benefits for a period of total disability during her recovery from her brain hemorrhage. Herr claims that even though the ALJ found her to be nondisabled at the time of the hearing, she was totally disabled for a period of time during her recuperation. Herr contends that total disability began on the date of her hemorrhage on April 17, 1985, and extended until at least November 30, 1987 (the date she terminated occupational therapy). She contends that she was therefore entitled to benefits for this two and a half year period.

The ALJ found in Herr's case that there was no period of total disability lasting the requisite twelve months or longer. 42 U.S.C. § 416(i)(1). As we noted earlier, we will affirm the ALJ's decision if it is supported by substantial evidence. *Steward,* 858 F.2d at 1297. Herr claims that she is entitled to benefits throughout the entire period during which her doctors prescribed physical and occupational therapy. However, medical records revealed that much of the progress Herr made in her recovery occurred within several months of her brain surgery on May 7, 1985. For exam-

ple, a status report prepared in June 1985 by Herr's occupational therapist noted significant progress in arm and hand strength. In a July 1985 report, the occupational therapist noted that Herr's left hand was "nearing norms and is functional when tasks are performed in sight." A neurologist's report dated August 16, 1985 revealed a "mild weakness of the left arm and left leg with slightly decreased grip on the left side." Also in August 1985, Herr's occupational therapist suggested that Herr replace out-patient therapy with a home program since further occupational therapy was not felt to be warranted.

Similar positive medical reports continue throughout the period leading up to the hearing in Herr's case, including marked improvements in Herr's sensory deficits. In a report dated October 31, 1986, Herr's vocational rehabilitation counselor reported that Herr had "beg[u]n to experience intermittent periods of sensations [in her left arm] includ[ing] tingling, cramping, stinging. By the end of two weeks, feeling was present totally down the left upper extremity, in fingers and thumb and along the sides of the fingers." Thus, seventeen months after her hemorrhage, even the sensory deficiencies in Herr's left arm had dissipated to a considerable degree. The ALJ relied on these and other medical reports in finding that Herr was not totally disabled during any twelve month period.[6] Thus, the ALJ's decision was supported by substantial evidence in the record.

## III.

Herr had failed to demonstrate that the ALJ's decision was not based on substan-

6. The Secretary points out that Herr's first application for disability benefits was filed on July 2, 1985—approximately three months after her brain hemorrhage—and denied by the Secretary in an order dated September 16, 1985. Since Herr did not appeal this denial, the Secretary contends that the September 1985 decision is *res judicata* as to the present benefits application and precludes a disability onset date prior to September 16, 1985. Herr contends that the onset date should remain the date of her hemorrhage. She alleges that the "Social Security Administration found that it erred in its original determination/denial of the July 2, 1985 application and at the administrative hearing treated

the onset date of Pamela Herr's claim for disability benefits as April 17, 1985 [the date of her hemorrhage]." Although it appears that the ALJ treated the potential onset date as April 17, 1985, there is no specific holding in the ALJ's decision on this point. In addition, there is no support in the record for Herr's assertion that the Administration "found that it erred" in denying her first application. However, we need not reach the issue of determining a disability onset date in this case. Substantial evidence exists in the record to support the ALJ's decision that Herr was not totally disabled for any twelve month period regardless of the potential onset date.

tial evidence. Therefore, the ALJ's decision denying her disability benefits claim was correct, and the order of the district court is

AFFIRMED.