936 F.2d 575
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Fred L. NIX, Plaintiff-Appellant,
v.
Louis SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 90-2988.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 10, 1991.*
Decided July 2, 1991.
 
 Before CUDAHY and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 Fred L. Nix appeals from the judgment of the district court affirming the decision of the Secretary of Health and Human Services that he is not disabled within the meaning of the Social Security Act, 42 U.S.C. Secs. 416(i), 423. We affirm.
 
 I.
 
 2
 On February 22, 1988, Nix applied for a period of disability and disability insurance benefits. The application was denied initially and upon reconsideration. On January 12, 1989, a hearing was held before an ALJ. The reports of several treating and examining physicians were introduced. These indicated that Nix suffers from severe ankylosing spondylitis,[1] psoriasis[2] and retral bulbar neuritis[3] which makes him legally blind in his right eye. Nix testified that he was thirty-seven years old and had a twelfth-grade education. He stated that he had worked as an inspector, shop helper, service station attendant, machine operator and coil winder. Nix also testified to the limitations he experienced in his daily life and in his social and recreational activities. A vocational expert also testified. He observed that Nix was not capable of returning to his past relevant work. The vocational expert concluded, however, that an individual with Nix's limitations could perform jobs falling into four occupations listed in the Dictionary of Occupational Titles (DOT): ticket seller, dispatcher, order clerk and telephone solicitor. The vocational expert testified that there were approximately 675 jobs in the region in these four occupations. Based on this testimony, the ALJ found that there were a significant number of jobs in the local economy that Nix could perform and that Nix was not disabled.
 
 
 3
 On August 11, 1989, the Appeals Council denied Nix's request for review; consequently, the decision of the ALJ became the final decision of the Secretary. On October 12, 1989, Nix brought an action in the district court seeking to set aside the decision of the Secretary. On July 12, 1990, the district court granted summary judgment in favor of the Secretary. Nix timely filed a notice of appeal.
 
 II.
 
 4
 We review the findings of the Secretary as to any fact to determine whether they are supported by substantial evidence. See Stuckey v. Sullivan, 881 F.2d 506, 508 (7th Cir.1989). Substantial evidence is more than a scintilla, less than a preponderance, and "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). We review the decision of the Secretary for errors of law. Schmoll v. Harris, 636 F.2d 1146, 1150 (7th Cir.1980).
 
 
 5
 For purposes of Social Security disability, a claimant is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continual period of not less than 12 months." 42 U.S.C. Sec. 423(d)(1)(A). The burden of proving disability is initially upon the claimant. A claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from performing vocationally relevant past work. The burden then shifts to the Secretary to show that the claimant can perform other types of work that exist in significant numbers in the national economy given the claimant's residual functional capacity, age, education and work experience. See Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987); 20 C.F.R. Secs. 404.1520(f), 404.1560-.1568 (1990). Where a claimant's residual functional capacity, education and work experience coincide with one of the rules in the Medical-Vocational Guidelines or "grids,"[4] the Secretary may rely upon the guidelines in determining disability. Walker, 834 F.2d at 640. Where, as here, the claimant suffers from nonexertional limitations, which are not accounted for by the guidelines, the guidelines are not conclusive of disability. Id. at 640-41. While the guidelines must still be used as a framework for decision-making, the Secretary must introduce additional evidence to show that the claimant is not disabled. See DeFrancesco v. Bowen, 867 F.2d 1040, 1045 (7th Cir.1989); 20 C.F.R. Sec. 200.00(e)(2); Social Security Rulings 83-12 & 83-14. The Secretary can satisfy his burden through the testimony of a vocational expert addressing whether there are a significant number of jobs that the particular claimant can actually do. See DeFrancesco, 867 F.2d at 1045.
 
 III.
 
 6
 Nix contends that the Secretary must show that " the range and kind of work for which [the claimant] is functionally and vocationally suited are sufficiently broad to constitute a reasonable outlook for making a vocational adjustment; and such jobs exist in significant numbers in the region in which the individual resides or in several regions of the country." Program Operations Manual System DI 25020.001. Nix contends that the Secretary failed to make the necessary showing on step one. Nix argues that the testimony of the vocational expert established that these four occupations constituted his occupational base, but did not address whether his occupational base was so significantly compromised that there was not a reasonable opportunity for him to make a work adjustment.
 
 
 7
 Because of Nix's exertional limitations, the starting point for the analysis is the grid for sedentary work. This grid directs a finding of not disabled for Nix because he is a "younger individual",[5] with a high school education who has done unskilled work. See Rule 202.20. This finding under the grid reflects an administrative evaluation that the full range of 200 sedentary occupations constitutes a significant number of jobs for vocational adjustment to be possible for someone of the same age, education and work experience as Nix. However, because Nix has nonexertional impairments, the full range of 200 sedentary occupations is not available in determining whether he can make a vocational adjustment to other work. Thus, the Secretary's burden was to show that Nix was capable of performing other work, that is, that he was capable of making a work adjustment to other jobs despite his additional limitations.
 
 
 8
 Social Security Rule 83-10 explains ?? issue of work adjustment is to be determined. It states:
 
 
 9
 [T]he issue of work adjustment is determined based on the interaction of the work capability represented by [residual functional capacity] (the remaining occupational base) with the other factors affecting capability for adjustment--age, education, and work experience.
 
 
 10
 The ALJ clearly considered these factors of residual functional capacity, age, education and work experience both when he applied the guidelines initially and as a framework and when he questioned the vocational expert. The hypothetical that the ALJ presented to the vocational expert included Nix's residual functional capacity, age, education and work experience. The gist of the vocational expert's testimony was that Nix could make a vocational adjustment to a number of specific occupations. In this case, the question of vocational adjustment was properly considered. See Social Security Ruling 83-12 ("Where the extent of the erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource."). The testimony of a vocational expert can constitute substantial evidence to support a conclusion that a claimant is not disabled. See Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir.1990).
 
 
 11
 Nix also contends that his occupational base has been significantly compromised by his impairments. Nix points out that the four occupations the vocational expert identified are but two percent of the 200 occupations which constitute the full range of sedentary work. Nix adds that the fact that the vocational expert identified 675 jobs within these four occupations is irrelevant in that the first step of the analysis should focus on whether the range and kind of sedentary work of which he is capable are significantly compromised. Nix contends that the Secretary must show that he can perform a majority of occupations in the sedentary range.
 
 
 12
 In support, Nix cites two cases for the proposition that where a claimant's residual functional capacity falls between two exertional levels, the Secretary must show that the claimant can perform a substantial majority of the occupations at a particular level. See Campbell v. Bowen, 822 F.2d 1518 (10th Cir.1987); Talbot v. Heckler, 814 F.2d 1456 (10th Cir.1987). While Campbell and Talbot both use this "substantial majority" language, neither of these cases focuses on whether a particular number of occupations identified by a vocational expert is sufficient to satisfy the Secretary's burden.
 
 
 13
 In Campbell, the decision focused on the fact that the vocational expert's testimony did not take into account one of the claimant's exertional limitations or any of his nonexertional limitations. When the vocational expert did factor in these limitations, he stated that the claimant would not be able to perform any of the four occupations that he had identified. Thus, Campbell turned on the fact that the occupations the vocational expert identified were not based on a complete consideration of all the claimant's limitations. The case did not address whether the four occupations were sufficient to satisfy the Secretary's burden.
 
 
 14
 In Talbot, the decision focused on whether there was substantial evidence to conclude that the claimant fit within the guidelines and therefore was not disabled. The ALJ relied on the guidelines, and the Secretary did not introduce the testimony of a vocational expert; therefore, Talbot is readily distinguishable. Despite the factual dissimilarity, Nix relies on a statement in a footnote that "while a claimant need not be able to perform all jobs in the range [e.g., sedentary, light, medium, heavy, or very heavy], one must be able to perform a substantial majority of them." Talbot, 814 F.2d at 1462 n. 3.
 
 
 15
 There are two problems with relying on this statement. First, it is dicta. Second, Nix takes the reference to a substantial majority of jobs out of the context in which Talbot discussed it. As referenced in Talbot, this language pertains to the initial analysis of a claimant's residual functional capacity, that is, whether the claimant has the physical capacity to meet the exertional strength requirements of "most" or a "substantial majority" of occupations in a particular range of work. See id. ("The report accompanying the promulgation of the Medical-Vocational Guidelines elaborates on the exertional categories by stating that 'within ' a range of work (sedentary, light, medium, heavy or very heavy) unless the individual possesses physical capacities equal to the strength requirements for most of the jobs in that range, he or she cannot be classified as able to do the potential range of work.") (quoting 43 Fed.Reg. at 55,361 (1978) (emphasis in original)). The "substantial majority" language in Talbot did not refer to the question of the sufficiency of vocational testimony.
 
 
 16
 In addition, 20 C.F.R. Sec. 404.1566(b) provides:
 
 
 17
 Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having the requirements which you are able to meet with your physical or mental abilities and vocational qualifications. 20 C.F.R. Sec. 404.1566(b) (1990) (emphasis added). This regulation suggests that a single occupation may constitute a sufficient occupational base to permit a claimant to make a work adjustment and is inconsistent with Nix's argument that the Secretary must establish that he can perform a majority of the sedentary occupations. As the Secretary points out, a vocational expert's testimony reflects a particularized evaluation of a claimant's limitations and identifies specific occupations suited to the claimant's residual functional capacity and vocational profile. This testimony goes beyond the more general finding under the guidelines that a claimant can perform unspecified occupations within a range.
 
 
 18
 Nix's argument is also inconsistent with the general purpose of Social Security disability. It is not a workers' compensation system. See Clark v. Sullivan, 891 F.2d 175, 177 (7th Cir.1989); Stephens v. Heckler, 766 F.2d 284, 285 (7th Cir.1985). Rather, it is intended to cover claimants who are not only unable to do their past relevant work, but are also unable to "engage in any other kind of substantial gainful work." 42 U.S.C. Sec. 423(d)(2)(A). Here the vocational expert identified four occupations that Nix could actually do. This testimony is inconsistent with a finding that Nix is unable to engage in any other kind of work.
 
 IV.
 
 19
 The vocational expert's testimony accurately took into account Nix's exertional as well as nonexertional limitations. The Secretary, through the vocational expert, met his burden of showing that Nix's impairments do not preclude him from making a work adjustment to other work as a ticket seller, dispatcher, order clerk or telephone solicitor.[6] This constitutes such evidence as a reasonable mind might accept to support the conclusion that Nix is not disabled.
 
 
 20
 Accordingly, the judgment of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied, and the appeal is submitted on the briefs and record
 
 
 [1]
 Ankylosing spondylitis is an "[i]nflammation of the vertebrae and surrounding structures which leads to fusion of the vertebrae and stiffness of the spine." 1 Schmidt's Attorney's Dictionary of Medicine A-266 (17th ed. 1982)
 
 
 [2]
 Psoriasis is a "chronic skin disease marked by the development of red patches on various parts of the body.... The patches are usually covered with a silvery, white scale." 3 Schmidt's, P-360
 
 
 [3]
 Retral bulbar neuritis or retrobulbar neuritis is an "[i]nflammation of the optic nerve, or the part of the optic nerve, which is behind the eyeball and within the orbit or eye socket, without involvement of the optic disc or the retina." 3 Schmidt's, R-94
 
 
 [4]
 The guidelines contain three charts, or grids, which set forth combinations of residual functional capacity (what the claimant can still do despite any impairments), age, education and work experience. Based upon this matrix of factors, the guidelines direct an appropriate finding of disabled or not disabled. In essence, the guidelines constitute an administrative evaluation that for a claimant with certain characteristics a reasonable opportunity exists (or does not exist) for that claimant to make an adjustment to other work at the applicable exertional level
 
 
 [5]
 A claimant between the ages of 18 and 49 is a "younger individual" for purposes of Social Security disability. 20 C.F.R. Sec. 404.1563
 
 
 [6]
 Nix expressly states that he is not raising the issue of whether 675 jobs within these four occupations constitutes a "significant number of jobs" for purposes of the Act. Consequently, we do not address it