Kenneth JABCZYNSKI, Plaintiff,

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. 93 C 7171.

United States District Court, N.D. Illinois, Eastern Division.

March 31, 1995.

---

Dale Allen, Allen & Sarkisian, Merrillville, IN, for plaintiff.

James Michael Kuhn, U.S. Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Kenneth Jabczynski ("Mr. Jabczynski"), applied for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 16, 1991. His claim was denied initially and upon reconsideration by State agency personnel. After a hearing, Administrative Law Judge ("ALJ") Larry M. Miller found that Mr. Jabczynski retained the residual functional capacity for light work not involving standing or walking more than two hours intermittently in an eight hour day or stooping, crouching and climbing more than occasionally. The Appeals Council denied Mr. Jabczynski's request for review. Consequently, the ALJ's decision became the final decision of the Secretary of Health and Human Services ("Secretary"). 20 C.F.R. § 404.981; *Herron v. Shalala,* 19 F.3d 329, 332–33 (7th Cir.1994) (citation omitted). On November 26, 1993, Mr. Jabczynski brought the present action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Secretary. Both parties have filed motions for summary judgment. For

the reasons set forth below, both parties' motions for summary judgment are denied, and this case is remanded to the Secretary.[1]

### Facts

At the time of the hearing before the ALJ, Mr. Jabczynski was forty-two years old. Mr. Jabczynski is married and has three children who live at home. Mr. Jabczynski has a high school education. Mr. Jabczynski was a journeyman mechanic at U.S. Steel, a job requiring him to regularly lift a tool box weighing 100–125 pounds, from 1971 to 1984, the year U.S. Steel shut down. In 1985, Mr. Jabczynski obtained work as a journeyman mechanic at Chrome Locomotive Industries. On September 10, 1987, Mr. Jabczynski was injured while working. He did not return to work after that date. Chrome Locomotive Industries fired him in December, 1989 because he was off work for too long. He has not been employed since.

At the hearing before the ALJ, Mr. Jabczynski testified that due to his injury, he suffers from pain in his lower back and down his right leg. He said that he also has numbness in his hands which has caused him to drop coffee cups and gallons of milk. He stated that on a scale of one to ten, his pain is typically around a seven, and, in order to ease the pain, he changes positions often. Mr. Jabczynski testified that he had been taking Tylenol III which decreased his pain but that he stopped taking the medication about eight months prior to the hearing date because he could not afford to pay for it. He testified that in November, 1987, Dr. Levin, his treating physician, performed a laminectomy on him which relieved his back pain for about a week. Dr. Levin has recommended further back surgery, which Mr. Jabczynski has not had because his insurance company has refused to pay for it.

Mr. Jabczynski testified that until 1989, he had engaged in physical therapy, including walking up to two and a half miles every other day and swimming for two and a half hours every other day. He was able to participate in these activities within forty-five days of his laminectomy. Mr. Jabczynski said that because his pain became worse due to these activities and he informed Dr. Levin of this fact, Dr. Levin advised Mr. Jabczynski to stop all therapy.

Mr. Jabczynski testified that since 1989, he has spent 99 percent of his time at home. He said that he lays down for 12 to 13 hours each day and primarily watches television, listens to the radio and reads books. He does not feel any pain while lying down. Mr. Jabczynski testified that Dr. Levin gave him a cane which he uses to walk whenever he is alone. He stated that he has gained weight even though he does not have much of an appetite.

He has never been referred to a psychologist or psychiatrist for treatment other than by his attorney and the social security administration. Mr. Jabczynski admitted a desire to figure out how to commit suicide in a way that would not hurt. Mr. Jabczynski testified that Dr. Levin has been his treating physician since 1987. Mr. Jabczynski stated that he used to see Dr. Levin about every three to five weeks but that his last visit was during the year before the hearing date.

The medical records produced at the hearing indicate that in November, 1987, Mr. Jabczynski complained to Dr. Levin that while at work on September 10, 1987, he was kneeling down trying to lift about 200 pounds when he suddenly felt severe pain across his lower back. Dr. Levin noted that physical therapy immediately after the injury had not resulted in recovery. Dr. Levin reported that a myelogram and a CT scan showed a right L4 disc protrusion, or herniation. Dr. Levin performed a laminectomy on Mr. Jabczynski.

In a letter to Mr. Jabczynski's attorney dated May 3, 1991, Dr. Levin stated that following the laminectomy, Mr. Jabczynski progressed satisfactorily until about one week after the operation when he complained

---

1. Mr. Jabczynski's first application for a period of disability and DIB was filed on May 21, 1988, denied initially and not further appealed. Mr. Jabczynski filed a second application for a period of disability and DIB on January 5, 1989 which was denied initially and upon reconsideration. An ALJ issued the Secretary's final decision on July 5, 1990, and Mr. Jabczynski failed to timely appeal that decision.

of recurrent severe low back pain radiating to the right leg. During the next eighteen months, the low back and radicular pain persisted. A CT scan and myelogram done in July, 1989 again showed L4 disc herniation. Dr. Levin wrote:

It is my medical opinion that Mr. Jabczynski suffers from a recurrent herniated lumbar disc at L4–5 on the right. He experiences low back and radicular right leg pain. Range of motion of the lumbar spine is significantly impaired. Motor and sensory loss include extension hallius longus weakness and diminition [sic] of sensory [sic] occur at the L5 dermatome.

This condition has persisted since September 1987. Various modes of treatment, including physical therapy, bedrest, steroids and muscle relaxants have not relieved his symptoms. Repeat surgical intervention may or may not ameliorate his condition.

As a result of his symptoms and herniated disc disease, Mr. Jabczynski has sustained functional impairments. His activities of daily are reduced by his inability to sit, stand or walk for extended periods greater than one hour. The low back pain and right leg pain is aggravated by sitting, standing or walking and relieved with bedrest occasionally. Muscle relaxants, specifically Robaxain 750mg, has [sic] afforded him minimal relief. Heavy lifting, strenuous physical activity or repetitive motions are contraindicated for the patient. Any type of ongoing physical activity would be delectrivous [sic] to the lumbar spine.

As a result of the above-mentioned limitations, Mr. Jabczynski is physically incapable of performing substantial gainful activity. This includes a sedentary vocation which requires sitting or remaining stationery [sic].

In July, 1991, the Social Security Administration referred Mr. Jabczynski to Dr. Shaukat A. Shah. Dr. Shah reported that Mr. Jabczynski does not suffer from either hallucinations or delusions and is not under the care of a psychiatrist or psychologist. Dr. Shah noted that Mr. Jabczynski reported pain and limped but was not carrying a cane or crutches. Dr. Shah further noted that

Mr. Jabczynski complained of excruciating pain while lying down; could bend down up to 85 degrees and extend up to 25 degrees; had movement up to 25 degrees for each side; and winced with pain when performing the straight leg raising test. Dr. Shah's final diagnosis was low back pain, status post laminectomy, status post herniated disc, no neurological findings suggestive of paralysis, degenerative joint disease and narrowing of the disc space at L4–L5, L5–S1.

In August, 1991, Dr. Julius Villaflor conducted a Residual Physical Functional Capacity Assessment in which he reported that Mr. Jabczynski was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight-hour workday, sit for six hours in an eight-hour workday and do unlimited pushing and/or pulling. Dr. Villaflor concluded that Mr. Jabczynski was able to frequently climb ramps or stairs, balance and kneel and to occasionally climb ladders, stoop, crouch and crawl. Dr. Villaflor's report also states that Mr. Jabczynski had low back pain; did not suffer from any motor or sensory abnormalities; and had a normal gait. Based on Dr. Villaflor's report, a vocational assessment specialist concluded that Mr. Jabczynski was able to perform light work that involves no climbing ropes or scaffolds and occasional climbing ladders, stooping, crouching and crawling.

In December, 1991, the State of Illinois Disability Determination Service referred Mr. Jabczynski to Dr. B. Murthy, for an examination. Dr. Murthy reported that Mr. Jabczynski complained of excessive pain. Due to his pain, he had difficulty getting on and off the examination table and was unable to perform some of the tests involved in the musculoskeletal exam. Dr. Murthy believed Mr. Jabczynski was malingering but did not specify his reasons for this observation. Dr. Murthy noted that Mr. Jabczynski had normal grip strength with normal digital dexterity in both hands; he walked with a limp but did not use an assistive device; his memory recall was intact; and his behavior was appropriate. Dr. Murthy's impression noted a history of disc herniation at the level of L4–L5, status post laminectomy, now with objec-

tive evidence of radiculopathy in the right L5 distribution; a history of disc damage at the level of L3–L4; and a history suggestive of moderate depressive neurosis.

In January, 1992, Dr. Robert W. Marquis, a psychiatrist, examined Mr. Jabczynski. Dr. Marquis reported that Mr. Jabczynski was irritable and gave the impression of having suffered from chronic pain for a considerable period of time, but at the time, Dr. Marquis did not possess the medical evidence indicating the nature or extent of Mr. Jabczynski's injuries. Because he did not have this medical evidence, Dr. Marquis could not make a determination as to whether or not Mr. Jabczynski's injuries justified his irritability. Dr. Marquis noted that although Mr. Jabczynski complained of a change in his memory, there was no objective evidence of memory impairment. Dr. Marquis reported that if Mr. Jabczynski does not have an organic lesion sufficient to account for his degree of impairment, Mr. Jabczynski may have a personality disorder adding to his physical impairment. Dr. Marquis concluded that Mr. Jabczynski's physical impairment combined with his current irritability would prevent him from "maintain[ing] persistence and pace in any work-like setting at the present time."

In February, 1992, Dr. Uidyaradala conducted a Residual Physical Functional Capacity Assessment of Mr. Jabczynski. Dr. Uidyaradala noted that Mr. Jabczynski had a laminectomy in 1987 for disc herniation and subsequently had repeated damage in the L3–4 disc area. The doctor further noted that Mr. Jabczynski suffered from low back pain and walked with a limp but did not use any assistive device. Dr. Uidyaradala reported that Mr. Jabczynski was capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing or walking at least two hours in an eight-hour workday and sitting for six hours in an eight-hour workday. He further reported that due to his lower back pain, Mr. Jabczynski is capable only of occasionally climbing, balancing, stooping, kneeling, crouching and/or crawling. Mr. Jabczynski was not suffering from any manipulative or visual limitations.

Dr. Uidyaradala also conducted a Mental Residual Functional Capacity Assessment of Mr. Jabczynski. He reported that as a result of Mr. Jabczynski's depression and preoccupation with his pain, he was markedly limited in his ability to understand, remember and carry out detailed instructions. Mr. Jabczynski was not at all limited in doing simple tasks. Dr. Uidyaradala further noted that Mr. Jabczynski showed no evidence of a thought disorder, suffered from reactive depression due to his physical disabilities and was irritable. The doctor concluded that Mr. Jabczynski had moderate restrictions in his activities of daily living, moderate difficulties in maintaining social functioning and seldom suffered from deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. Based on Dr. Uidyaradala's report, a vocational assessment specialist concluded that Mr. Jabczynski was capable of performing work that is light, sedentary and unskilled.

Dr. David Frank, a clinical psychologist, examined Mr. Jabczynski in March, 1992 at the request of Mr. Jabczynski's attorney in connection with his claim for worker's compensation. The results of one of the three tests administered, the Minnesota Multiphasic Personality Inventory–2, were invalid because of elevated validity scores. Dr. Frank concluded that Mr. Jabczynski suffered from Chronic Pain Syndrome, had difficulty in concentrating and had decompensation on work-like tasks. Dr. Frank concluded that Mr. Jabczynski was "totally and permanently disabled within the meaning of the [Worker's Compensation] Act."

In April, 1992, a physical therapist, Jack Gamet, performed a work capacity evaluation of Mr. Jabczynski. In his summary of the tests completed, Mr. Gamet reported that Mr. Jabczynski was very muscular without an overabundance of adipose tissue. Mr. Gamet noted that Mr. Jabczynski gave an invalid effort on the hand dynamometer, the CA6000 cervical and lumber range motion tests. Mr. Gamet states (without providing the reason for his statement) that he found inconsistency involving Mr. Jabczynski's complaints of glove numbness on both hands and bilaterally in the area of the fingers

resulting in an inability to carry a coffee cup and a one gallon milk container. Mr. Jabczynski reported pain at the seven level before starting the tests and at the nine level after completion (on a scale of one to ten), which was higher than Mr. Gamet anticipated.

ALJ Miller called upon Thomas Grzesik, a vocational expert, to testify at the hearing. Mr. Grzesik described Mr. Jabczynski's past work as a journeyman mechanic as skilled. The ALJ asked Mr. Grzesik to assume a hypothetical individual required to have a sit/stand option, who can occasionally bend, stoop or crouch but cannot climb and who can occasionally lift twenty pounds and frequently lift ten pounds. Mr. Grzesik testified that such an individual would be able to perform jobs available in the Chicago metropolitan area including hand packager (6,500 jobs in the region), electronic assembler (4,000 jobs in the region), mechanical assembler (3,500 jobs in the region) and cashier (4,000 jobs in the region).

ALJ Miller concluded that Mr. Jabczynski was not "disabled" within the meaning of the Social Security Act. He acknowledged that the medical evidence established that Mr. Jabczynski has severe status post lumbar laminectomy and reactive depression. But he also determined that Mr. Jabczynski's subjective complaints were not credible to the extent alleged and that Mr. Jabczynski does not have an impairment or combination of impairments as defined by Social Security regulations. ALJ Miller concluded that although Mr. Jabczynski is incapable of performing his past work as a mechanic, he has the capacity to perform light, unskilled, sedentary work involving occasional stooping, crouching and/or climbing, and there are a significant number of jobs in the Chicago metropolitan region which Mr. Jabczynski could perform.

## Discussion

### A. Standard of Review

 The Social Security Act ("the Act") provides for limited judicial review of final decisions of the Secretary. 42 U.S.C. §§ 405(g), 1383(c)(3). The role of this Court is only to determine whether the decision of the ALJ is supported by substantial evidence in the record. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir.1993) (citations omitted); *Steward v. Bowen,* 858 F.2d 1295, 1297 (7th Cir.1988) (citation omitted).[2] In making this determination, the district court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the Secretary." *Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir.1994) (citation omitted). Rather, the court must affirm a decision supported by substantial evidence in the absence of an error of law. *Herr v. Sullivan,* 912 F.2d 178, 180 (7th Cir.1990) (citations omitted); *Edwards v. Sullivan,* 985 F.2d 334, 336–37 (7th Cir.1993).

### B. Sequential Evaluation

 In order to qualify for DIB or SSI, a claimant must be disabled. *Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993). The Act defines a "disabled" individual as one who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. To satisfy this definition, an individual must have a severe impairment which makes him or her unable to perform his or her previous work or any other substantial gainful activity which exists in the national economy. 20 C.F.R. § 416.905.

Social Security regulations require the factfinder to follow a five-step sequential inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)–(f). The

2. The Act provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ..." 42 U.S.C. § 405(g). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pope v. Shalala,* 998 F.2d 473, 480 (7th Cir.1993) (citation omitted). " 'Substantial evidence may be something less than the greater weight or preponderance of the evidence' and a finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion." *Oyen v. Shalala,* 865 F.Supp. 497, 507 (N.D.Ill.1994) (citations omitted).

Seventh Circuit has summarized the test as follows:

> The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job.

*Pope v. Shalala, supra,* 998 F.2d at 477–78 (citing *Schroeter v. Sullivan,* 977 F.2d 391, 393 (7th Cir.1992); *Rhoderick v. Heckler,* 737 F.2d 714, 715 (7th Cir.1984)).

In the present case, ALJ Miller applied the sequential evaluation and decided the case at Step Five. He found that Mr. Jabczynski has not worked at substantial activity since September 10, 1987; that the medical evidence established that Mr. Jabczynski has been diagnosed with severe status post lumbar laminectomy and reactive depression; that Mr. Jabczynski does not have an impairment or combination of impairments listed in or medically equal to one listed in the applicable regulations; and that Mr. Jabczynski was unable to perform his past work as a mechanic. He then found that Mr. Jabczynski has the residual functional capacity to perform light work and that there are a significant number of jobs in the national economy which Mr. Jabczynski could perform. Consequently, the ALJ concluded that Mr. Jabczynski was not "disabled" within the

meaning of the Act and the applicable regulations.[3]

Mr. Jabczynski argues that ALJ Miller erred in not finding that he is "disabled." Mr. Jabczynski contends in part that the ALJ did not accord proper weight to the opinions of Dr. Levin, his treating physician, and Dr. Frank, a clinical psychologist.

### C. Dr. Levin's and Dr. Frank's Opinions

ALJ Miller discredited the opinion of Dr. Levin, Mr. Jabczynski's treating physician, that Mr. Jabczynski is physically incapable of performing any substantial gainful activity including a sedentary vocation. "A blanket rule that the opinion of the treating physician is entitled to greater weight than that of a consulting physician is arbitrary." *Peabody Coal Company v. Helms,* 901 F.2d 571, 573 (7th Cir.1990). The ALJ may decide whether to believe the treating physician with experience and knowledge of the case but with possible bias for the patient or the consulting physician with expertise and knowledge of similar cases but with possible bias against the patient. *Micus v. Bowen,* 979 F.2d 602, 608 (7th Cir.1992); *DeFrancesco v. Bowen,* 867 F.2d 1040, 1043 (7th Cir. 1989) (each may have bias). Of course, resolution of such evidentiary conflicts is within the "exclusive domain of" the ALJ, but the ALJ's decision must be supported by substantial evidence. *Dray v. Railroad Retirement Board,* 10 F.3d 1306, 1311 (7th Cir. 1993); *Micus v. Bowen, supra,* 979 F.2d at 608.

ALJ Miller discounted Dr. Levin's opinion that sitting, standing or walking aggravates Mr. Jabczynski's low back pain and right leg pain; that he is unable to sit, stand or walk for more than one hour; and that he is physically incapable of performing substantial gainful activity including a sedentary vocation requiring sitting or remaining sta-

---

3. ALJ Miller also found that the doctrine of administrative *res judicata* is applicable through July 5, 1990, the date of the ALJ's decision on Mr. Jabczynski's prior application for DIB. A decision to apply administrative *res judicata* is a discretionary one not subject to judicial review. *Johnson v. Sullivan,* 936 F.2d 974, 976 (7th Cir. 1991). Mr. Jabczynski did not argue and I do not find that the ALJ in effect reopened the earlier claim and was thereby estopped from applying administrative *res judicata. See Kent v. Sullivan,* 1992 WL 80518, *5, 1992 U.S. Dist. Lexis 5471, *13–*14 (N.D.Ill. April 7, 1992). Moreover, Mr. Jabczynski's contention that Dr. Levin's May, 1991 letter was new and material evidence requiring the ALJ to reopen his prior claim has no merit because the record does not conclusively show that Dr. Levin's opinion was based on pre-July, 1990 information.

tionary. The only reason the ALJ provided for discrediting Dr. Levin was that the doctor's opinion was "essentially based on and can only be deduced from the claimant's assertions" which the ALJ decided were not credible. There is nothing in Dr. Levin's letter indicating that his conclusions were primarily based on Mr. Jabczynski's complaints of pain. In fact, Dr. Levin specifically stated that Mr. Jabczynski's functional limitations are the result of his herniated disc disease. The ALJ did not articulate his reasons for ignoring Dr. Levin's conclusion that for an organic reason, Mr. Jabczynski feels pain and has specific impairments.[4]

In addition, following his psychological examination of Mr. Jabczynski in March, 1992, Dr. Frank concluded that Mr. Jabczynski suffers from Chronic Pain Syndrome and that he is "totally and permanently disabled within the meaning of the [Worker's Compensation] Act." The ALJ does not even mention the Chronic Pain Syndrome diagnosis in his opinion.

The ALJ was required to explain with particularity the basis for his decision to discredit Dr. Levin's and Dr. Frank's opinions in apparent favor of the positions of consulting physicians Dr. Villaflor, Dr. Uidyaradala and Dr. Murthy. *Dray v. Railroad Retirement Board, supra,* 10 F.3d at 1311. Because the ALJ did not adequately do so, this Court has no indication that the ALJ sufficiently reviewed the evidence in the record. Accordingly, this case is remanded pursuant to sentence four of Section 405(g) for the ALJ to review the record in full and articulate the basis for his decision in detail. 42 U.S.C. § 405(g); *O'Connor v. Shalala,* 23 F.3d 1232, 1233 (7th Cir.1994).[5]

### Conclusion

For the reasons set forth above, Mr. Jabczynski's and the Secretary's motions for summary judgment are denied. This case is remanded to the Secretary for proceedings consistent with this opinion.

4. It is noteworthy that the record does not contain any examining doctors' reports, except perhaps Dr. Murthy's, that conflict with Dr. Levin's opinion that Mr. Jabczynski's pain is organically based and limits his activity to the extent stated in the May, 1991 letter. In fact, the record is replete with reports of Mr. Jabczynski's pain and objective medical problems. Moreover, although the ALJ noted that "the physical therapist was of the opinion that the underlying impairment would not reasonably produce pain of the intensity and duration alleged," this Court cannot find any such statement in the record.

5. In addition to discrediting Dr. Levin's and Dr. Frank's opinions, the ALJ decided that Mr. Jabczynski's reports of pain were not credible. Mr. Jabczynski, in arguing that the ALJ erred in finding that he was not credible, bears the burden of demonstrating that the ALJ's determinations are "patently wrong." *Herr v. Sullivan, supra,* 912 F.2d at 182 (citing *Kelley v. Sullivan,* 890 F.2d 961, 965 (7th Cir.1989)). I refrain at this point from addressing this issue because the ALJ's reconsideration of Dr. Levin's and Dr. Frank's opinions may affect his credibility determination. This is so especially in light of the fact that the ALJ's decision on credibility partially *rested on his discounting Dr. Marquis' opinion* that Mr. Jabczynski could not "maintain persistence and pace" in a work setting because Dr. Marquis did not know at the time if the medical evidence of Mr. Jabczynski's physical impairment would support Mr. Jabczynski's complaints of pain. If the ALJ decides to credit Dr. Levin's opinion that Mr. Jabczynski's organic disorders cause his functional impairments to the extent *stated by Dr. Levin, he would also most likely* credit Dr. Marquis' opinion.