**Mary A. HEJNA, Plaintiff,**

**v.**

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 95 C 4529.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 25, 1996.

Anthony J. Peraica, Anthony J. Peraica & Associates, Ltd., Chicago, IL, for Mary A. Hejna.

Mary A. Hejna, Burbank, IL, pro se.

Sherri Thornton, United States Attorney's Office, Chicago, IL, for Shirley Chater.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Mary A. Hejna, applied for Supplemental Security Income and Disability Insurance Benefits on November 12, 1993. After her claims were initially denied, Ms. Hejna requested a hearing before an Administrative Law Judge. At the hearing, held on November 15, 1994, Ms. Hejna was represented by counsel. ALJ Hughes concluded that Ms. Hejna was not "disabled" within the meaning of the Social Security Act. The ALJ found that Ms. Hejna was engaged in substantial gainful activity and that she has the residual functional capacity to perform light work [1] except for the capacity to drive or work around unprotected heights or dangerous machinery. Ms. Hejna seeks judicial review of the final decision of the Commissioner of Health and Human Services ("Commissioner"). Both parties have filed motions for summary judgment. For the reasons set forth below, the Commissioner's motion is granted, and Ms. Hejna's motion is denied.

### Standard of Review

■ The Social Security Act ("the Act") provides for limited judicial review of final decisions of the Commissioner. The role of this court is only to determine whether the decision of the ALJ is supported by substantial evidence in the record. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wolfe v. Shalala*, 997

F.2d 321, 322 (7th Cir.1993). In determining whether the Secretary's findings are supported by substantial evidence, the district court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the [Commissioner]." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir.1994). Rather, the court must affirm a decision supported by substantial evidence in the absence of an error of law. *Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir.1990).

### Sequential Evaluation

■ In order to qualify for Supplemental Security Income and Disability Insurance Benefits, a claimant must be disabled. *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993). The Act defines a "disabled" individual as one who is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). *See also* 20 C.F.R. § 404.1505. To satisfy this definition, an individual must have a severe impairment that makes her unable to perform her previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505.

The Social Security regulations require the factfinder to follow a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The Seventh Circuit has summarized the test as follows:

> The [Commissioner] must determine in sequence: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. Once

---

1. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. A job in this category requires much walking or standing (off and on, for a total of approxi-

mately six hours of an eight-hour workday), and, if sitting, it involves some pushing and pulling of the arms or legs.
*Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995).

the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope,* 998 F.2d at 477–78.

In the present case, ALJ Hughes applied the sequential evaluation and decided the case at step four. The ALJ found that Ms. Brown has worked at substantial activity since October 24, 1994; that the medical evidence establishes that Ms. Hejna "has a seizure disorder and is status-post aneurysm clipping;" that Ms. Hejna does not have an impairment or combination of impairments listed in or medically equal to one listed in the applicable regulations; that Ms. Hejna has the residual functional capacity to perform work-related activities "except for work involving lifting more than 20 lbs at a time or 10 lbs frequently, ... driving, ... dangerous machinery[,] or ... unprotected heights;" and that Ms. Hejna is able to perform her past work as a secretary. Consequently, the ALJ found Ms. Brown was "not disabled" within the meaning of the Act and the applicable regulations.

### Whether the ALJ's Decision was was Supported by Substantial Evidence

■ ALJ Hughes essentially concluded that Ms. Hejna's subjective complaints were inconsistent with the other evidence in the record. The ALJ also determined that the evidence in the record indicated that Ms. Hejna is able to do light work not involving certain hazards. Ms. Hejna argues that the ALJ's findings are not supported by substantial evidence. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pope,* 998 F.2d at 480 (citation omitted). " 'Substantial evidence may be something less than the greater weight or preponderance of the evidence' and a finding may be supported by substantial evidence

even if a reviewing court might have reached a different conclusion." *Oyen v. Shalala,* 865 F.Supp. 497, 507 (N.D.Ill.1994) (citations omitted).

At the hearing on November 15, 1994 before the ALJ, Ms. Hejna testified that she was born on January 23, 1958 and was living with her husband, three year-old daughter, and in-laws. Ms. Hejna completed high school and was working full-time as a secretary for Reliance Trading Company earning $6.00 per hour. She was the only secretary in the office. She took the job to determine if she was capable of working as well as for the money. Her job required her to type memoranda, answer telephone calls, sit most of the day, and lift only light papers.

Ms. Hejna suffered epileptic seizures during her teens, but was seizure free from 1983 through 1993. She went to the hospital on November 1, 1993 after experiencing sharp neck pain, a headache, and blackouts. A CT scan and a cerebral angiogram indicated that Ms. Hejna had bilateral cerebral artery aneurysms.[2] She had surgery on the aneurysms in November, 1993 and April, 1994. The doctor who prepared the Discharge Summary in November, 1993 stated that a muscle pull probably caused Ms. Hejna's neck pain, and that it was unlikely that the aneurysms caused her blackouts. An EEG on November 3, 1993 did show "occasional generalized epileptiform discharges." Tr. 118. Dr. Kelly, however, stated on November 29, 1993, soon after Ms. Hejna's right carotid artery aneurysm was clipped, that any seizures that Ms. Hejna experienced would not interfere with "work-related activities such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking, [and] traveling," although she should not drive, work at heights, or use dangerous machinery. Tr. 136.

In the Discharge Summary prepared after Ms. Hejna's left carotid cerebral aneurysm was clipped, Dr. Wolter stated that in the past after she took Dilantin, Ms. Hejna experienced fatigue but no seizures. Ms. Hejna recovered very well from surgery. She com-

2. An aneurysm is a "circumscribed dilation of an artery, or a blood-containing tumor connecting directly with the lumen of an artery." Stedman's Medical Dictionary (5th ed.) 1982.

plained only of "some residual left handed weakness and some right superior quadrantanopsia." Tr. 172.

Based on examinations of Ms. Hejna on March 14, 1994 and April 13, 1994, Dr. Charles D'Angelo, a neurologist, noted that Ms. Hejna experienced slight weakness in her left upper and lower extremities. He further stated that her left side felt slightly fatigued after sustained or repetitive activity. Dr. D'Angelo indicated that Ms. Hejna's gait was normal.

Dr. D'Angelo examined Ms. Hejna in his office on May 3, 1994. On that day, he wrote a letter to Dr. Floyd in which he stated that the results of Ms. Hejna's neurological examination were "entirely normal." Ms. Hejna showed no signs of "global or focal deficit"; her incisions healed well; and she had no complaints except for fatigue and "some clicking near her left temporomandibular joint ... probably due to tightness of the left temporal muscle which was mobilized at the time of surgery." Tr. 188. Dr. D'Angelo recommended that Ms. Hejna have an EEG in one month. If the EEG did not show any seizure activity, he would consider discontinuing her Dilantin. Dr. D'Angelo concluded: "It is quite possible that her 'seizure disorder' was due to her aneurysms." Tr. 188.

On June 21, 1994, Dr. Michael Smith, a neurologist, examined Ms. Hejna and reported that she had not recently experienced any seizures. Dr. Smith did not mention serious weakness in the left arm or leg. He stated: "Motor examination revealed good power and normal tone, with deep tendon reflexes slightly brisker on the right vs the left." Tr. 204. He reported that Ms. Hejna's gait was normal and her spatial memory was intact, but she had an impairment to her verbal memory and visual field.

In July, 1994, Ms. Hejna apparently complained of "spells." Tr. 206. She was then given carbamazepine, and her complaints ceased. Dr. Smith's treatment notes from August, 1994 indicate that Ms. Hejna felt fine and had no seizures. Consequently, she was instructed to remain on carbamazepine.

Two residual functional capacity assessments in the record conclude that Ms. Hejna is capable of performing the full range of light work except for work involving unprotected heights or dangerous machinery. Tr. 153–60, 190–97.

Despite the evidence recited above, Ms. Hejna argues that other evidence in the record supports her claimed disability, which she says includes seizures, episodes in which she essentially "blacks-out", and numbness resulting in her ability to use only one hand. Most of this evidence was Ms. Hejna's own testimony. No medical evidence supported her claims. (The one possible exception, a report from her own doctor to an insurance company written on December 9, 1993, stating that she should be considered totally disabled until at least January, 1995, was effectively supplanted by later reports by him following her second surgery, including a May 3, 1994 letter in which Dr. D'Angelo stated that her neurological examination was "entirely normal" and that her previous seizure disorder may have been due to the aneurysms.) The only evidence to support Ms. Hejna's testimony were reports by her relatives (written in March, 1994) in which they stated that she had had seizures in their presence. But reports by Dr. Smith, one of her doctors, in June and August, 1994, stated that she had had no recent seizures.

Ms. Hejna complains that the ALJ mischaracterized Ms. Hejna's testimony, particularly her statements with respect to childcare and housework, but the record supports the ALJ's conclusions. To the extent that some of the testimony could support a contrary view, the ALJ on this record was entitled to disbelieve Ms. Hejna. Her credibility determination was not "patently wrong." *Diaz,* 55 F.3d at 308.

Ms. Hejna contends that the ALJ improperly emphasized the fact that she was employed. I disagree. Even though the ALJ found that Ms. Hejna was engaged in substantial gainful activity, the ALJ noted that if Ms. Hejna was disabled, then her employment could be deemed a "trial work period." Therefore, the ALJ completed the sequential analysis in order to determine whether Ms. Hejna could be considered to be undertaking a "trial work period." The ALJ, however,

found that Ms. Hejna was not disabled and therefore would not be entitled to benefits.

Ms. Hejna also argues that the ALJ questioned her in an adversarial manner. Again, I do not agree. The transcript of the hearing indicates only that ALJ Hughes interrogated Ms. Hejna in order to discover the truth, which an ALJ properly may do. *See Roach v. National Transportation Safety Board,* 804 F.2d 1147, 1160 (10th Cir. 1986), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 195 (1988).

Finally, Ms. Hejna attaches to her brief a "Discharge/Transfer Summary," dated June 23, 1995, from the Illinois Department of Mental Health and Developmental Disabilities. There is no indication that this document was part of the record before the Commissioner. Ms. Hejna does not request that I remand her case to the Commissioner for consideration of this document. Accordingly, I may not take the document into account.

I conclude that there is substantial evidence in the record to support the ALJ's conclusion that Ms. Hejna is capable of doing light work with some restrictions.

### Conclusion

For the reasons set forth above, the Commissioner's motion for summary judgment is granted, and Ms. Hejna's motion for summary judgment is denied.